# CHARLESTON.

STATE v. LOW *et al.*

Submitted February 4, 1899—Decided April 15, 1899.

1. TAXATION—*Valuation.*

   The object of the State is to collect from every one who claims title to land the taxes thereon, at a fair cash valuation.   (p. 458).

2. TAXATION—*Payment.*

   Where there is privity of title, one payment of taxes is sufficient and full satisfaction, whether the land is charged as a whole in the name of one, or the various interests separated and charged to the respective owners, dividing the valuation equitably between or among them as provided in section 25, chapter 29, Code. (p. 458).

3. TAXATION—*Oil and Gas—Forfeiture—Non-entry.*

   Where a grantor conveys the gas and oil in a tract of land, and the assessor fails to charge the interest so conveyed on the land book in the name of the grantee, for taxation, with its equitable proportion of the valuation of the land of which it is a part, as provided by said section 25, and the land remains charged as a whole to the grantor at the full valuation, and he keeps the taxes paid thereon, there can be no forfeiture of such gas and oil interest for non-entry for five years in the name of the grantee. (p. 458).

Appeal from Circuit Court, Doddridge County.

Bill by the State against A. H. Low and others.   Judgment for plaintiff.   Defendants appeal.

*Reversed.*

EDWIN MAXWELL and MILLARD F. SNYDER, for appellants.
RAMSEY & IRELAND AND M. H. WILLIS for appellee.

McWHORTER, JUDGE:

On the 7th day of February, 1898, the State of West Virginia filed her bill in the circuit court of Doddridge County for the purpose of selling for the benefit of the school fund various tracts and parcels of land, and gas and oil interests in other tracts, as set out and described in the bill; alleging that certain of said lands are liable to sale

as waste and unappropriated, and others were forfeited for the nonpayment of the taxes thereon for the years mentioned, and certain estates or interests in lands of said county of Dodridge had not been charged with the taxes thereon upon the land books of said county for the five consecutive years of 1892, 1893, 1894, 1895, and 1896, and were therefore forfeited to the State by reason of the owners not having been assessed and charged on the land books of said county with the taxes thereon for the said five successive years, and that the State had become the owner thereof, and the same were liable to sale for the benefit of the school fund, and praying that the parties named in the caption be made defendants and required to answer, and that the cause be referred to a commissioner of the court, to ascertain and report what of the said tracts of land, interests, and estates were liable to sale for the benefit of the school fund, and what were liable to be redeemed, and who might of right redeem the same, etc. The defendants, A. H. Low, S. B. Hughes, L. E. Mallory, C. H. Rathbone, M. C. Treat, John A. Nichol, and others, demurred to the bill; and the said six named defendants tendered their joint answer, which was filed, and to which plaintiff replied generally. The answer alleges, as to their interests in certain oil and gas, conditional grants, or options claimed to be forfeited for nonentry for the years alleged: That in the year 1891 respondent A. H. Low obtained a number of conditional grants for oil and gas in said Doddridge County (and gives a list of them). That said Low, by assignments, conveyed three-sixths of his interest to and in said grants to respondents Rathbone, Treat, and Mallory, and two-sixths thereof to S. B. Hughes, and that S. B. Hughes assigned his interest to John A. Nichol. That none of said options have been closed, or the final amounts paid, except the one tract of 42 acres owned by Dora V. and M. F. Green, November 5, 1892; Peter Ash, 111 acres, January 13, 1894; Mildred J. and M. J. Ash, 64 acres, July 12, 1894. That all of said tracts of land on which these conditional grants were given were assessed and valued at the last reassessment of real estate in the State, as provided by law. That the land was valued, including all the oil and gas and other mineral. That said tracts of land still had the same valuation, and were so charged on the

land books of said county in the name of said owners who gave the grant, or their vendees, and were so charged for all of said years 1892, 1893, 1894, 1895, and 1896, for which they were claimed to be forfeited, and the taxes thereon fully paid. That the assessor of Doddridge County never assessed said gas and oil interests on any of their tracts separately to respondents, except the three tracts mentioned, on which the options were closed, and that the respondents were informed that they had no right or power to have the same done, and could not do so if they desired, and that the apportionment between the owner of the land surface and the owner of the oil and gas could be done only by the assessor. They further allege that the owners of the said tracts of land who gave the conditional grants thereon, and each of them, and their vendees, had paid all the taxes thereon for the years 1892,1893, 1894, 1895, and 1896, including the whole value of the land, surface, mineral, coal, oil, gas, timber, etc.; that the State had received all her taxes on said lands, and each tract thereof, for the full value, including oil and gas interests from the owners of the land, and even if these conditional grants were taxable, which they deny, there was and could be no forfeiture as long as the taxes had been paid, either by the owners, or the owners of the conditional grants; that the conditional grants are not taxable, or the subjects of taxation, and they deny the forfeiture, or that they had been off the land books for the said years; that it is true they had not been on the land books, in the names of respondents, for said years, but they were on the said books in the names of the owners of the lands, and the taxes paid on each and every parcel and tract of said land, and the oil and gas thereon; that said oil and gas conditional grants or options are not real estate until closed, and cannot be subjects of taxation until closed, and none except those which have been closed are subjects of taxation under the laws; that the interests claimed and owned by respondents on all except those that have been closed are held under agreements, all of which are similar, and all identical in form with the one made by James M. and W. F. Squires on 80 acres of land in Central District, a copy whereof is filed with the answer, marked "YY," and is in the words and figures following: "In consideration of the

sum of eight ($8.00) dollars, the receipt of which is hereby acknowledged, James M. Squires and William F. Squires, of Doddridge County, West Virginia, grantors, have granted and conveyed, and do hereby convey, subject to the following conditions, unto A. H. Low, of Toledo, Ohio, grantee, all the oil and gas in and underlying the following described premises, to wit: That piece or parcel of land in the district of Central, county of Doddridge, and State of West Virginia, bounded or adjoined by the lands of the said grantee, D. F. Hudkins, and S. Smith, being all of the home farm, on which said grantors now reside, containing eighty (80) acres, be the same more or less. This grant is subject, nevertheless, to any rights now existing to the lessee by virtue of the lease heretofore given on said land for oil and gas; but if said lease has expired or become void, or shall hereinafter expire or become void, or if no such lease ever existed, said grantee shall have, and is hereby granted, all the rights and privileges of drilling and operating on said land to produce, store, and remove the said oil and gas necessary, and usually granted to the lessee in an oil and gas lease. This grant and conveyance is made on condition that said grantee does, within ninety days after a well shall have been drilled on said land to the usual depth for oil and gas, and been properly completed, tubed, and tested for oil, pay unto the said grantors the sum of ($800.00) eight hundred dollars. If the said grantee shall (as he may do at his option) omit to pay the said sum of eight hundred dollars within the time aforesaid, then this grant shall become as absolutely null and void as though it had never been made, and said grantor shall retain the sum first above mentioned as full liquidated damages. Depositing said sum of $800.00 in a bank at Clarksburg, West Virginia, to the credit of said grantor, shall be equivalent to payment of the same to, and its acceptance by said grantor. It is expressly agreed that if said lease is and remains in force, and the said grantee pays the said $800.00, he shall thereafter be entitled to all the royalty and money arising therefrom, but not before said sum is paid. This grant shall expire ten (10) years from this date, if no well shall have been drilled on said land by that time, unless the said sum of $800.00 shall be paid without the well being drilled. This grant,

and the conditions, terms, and provisions thereof, shall apply and extend to the said grantor and grantee, their heirs, executors, administrators, and assigns. In witness whereof, we have hereunto set our hands and seals this 29th day of April, A. D. 1891.     J. M. Squires.     (Seal.) William F. Squires.     (Seal.)     A. H. Lowe.     (Seal.)     W. P. Moon, Witness,"—and duly acknowledged.

An agreed statement of facts, signed by the attorneys of the respective parties, was filed in the cause, which statement, as far as it affects the questions involved in the appeal in this cause, is as follows: "Witnesseth, that the said Ramsey and Ireland, attorneys, and the said Snider, attorney, agree upon the following facts in said cause: The land on which the grants were given wherein the oil and gas interests are claimed to be forfeited, as set up in said bill, was valued at the last valuation or reassessment of real estate in West Virginia as the land has always been assessed for taxation, and was placed on the land books of said county in the year 1892 at that valuation, and has continued on the land books for the years 1892, 1893, 1894, 1895, and 1896 at the same valuation, and that the taxes thereon, as so assessed, have all been paid for said years by said persons who owned the lands and gave the grants, or their vendees, and that said grants, or the interests therein, except those which have been closed by the payment of the final amount, have never been placed on the land books in the name of A. H. Lowe and his assigns for taxable purposes, and that they have paid no taxes on the same for said years, and that all of said grants are similar in form, and, so far as it affects this question of taxation, identical with the copy filed with the answer of A. H. Low *et al.* marked 'Exhibit YY.' "

On the 26th of July, 1898, the cause was heard, the demurrer of A. H. Low and others to the bill was overruled, and the court held, and so decreed, that said oil and gas interests and estates in the bill mentioned were forfeited to the State, and liable to sale for the benefit of the school fund, subject to the conditions and requirements contained in the grants of said estates, and decreed that the commissioner of school lands proceed to sell the same at public auction for cash, from which decree the said defendants A. H. Low, John A. Nichol, L. E. Mallory, C. H.

Rathbone, and M. C. Treat appealed. It is contended by appellants that their interests are not of such a character as to be subjects of taxation.

Two questions arise in this case: First. Did the appellants have such interest in the land as could properly be taxed on the assessor's land books as real estate, separately from the interests of the vendors? And, second, if they had such interest, did their failure to have it placed on the land books, and charged with taxes thereon in their name, for the years 1892 to 1896, both inclusive, as alleged in the bill, work a forfeiture of their title, notwithstanding the same was carried on said books for the same years, and the taxes paid thereon in the names of their grantors? In other words, was the payment of the taxes on the lands for said years by their vendors, at the full valuation placed upon said lands by the assessment of 1891, which included all gas, oil, minerals, and everything that went to make up the real estate, complete and full satisfaction of all taxes thereon to which the State was entitled? To ascertain what estate, if any, appellants are entitled to, it is necessary to take the whole contract together. As has been said, "it must be taken by the four corners," and examined altogether, to get at the meaning of it. It starts out with, the "grantors have granted and conveyed, and do hereby convey, subject to the following conditions"; then proceeds to make such conditions that, while the grantee has the right, as appellee says in one of his briefs, "to take possession of the farm, punch it full of holes, and search and explore for oil, the farmer will not be heard to complain until ninety days have passed without the payment being made." It is clearly a present grant, with the right to the grantee to take possession and drill and work upon said land; and in the second paragraph the grantee is "granted all the rights and privileges of drilling and operating on said land, to produce, store and remove the said oil and gas, necessary and usually granted to the lessee in an oil and gas lease." So that, in any event, the grantee has ninety days after a well has been properly completed, tubed, and tested for oil in which to pay the eight hundred dollars, in all of which time he may produce, store, and remove the said oil and gas before the payment, so far as the provisions of said contract are

concerned. "If the act or condition required does not nec-
essarily precede the vesting of the estate, but may accom-
pany or follow it, and if the act may as well be done
after as before the vesting of the estate, or if, from the
nature of the act to be performed, and the time required
for its performance, it is evidently the intention of the
parties that the estate shall vest, and the grantee perform
the act after taking possession, then the condition is sub-
sequent. 6 Am. & Eng. Enc. Law, 901, and cases there
cited. "The fee passes by a deed upon a condition subse-
quent in the same manner and to the same extent as if the
condition did not exist subject to the contingency of being
defeated as provided in the condition." 2 Desty on Deeds,
section 959. In the case at bar we have a grant in fee,
liable to be defeated by the failure to pay the eight hun-
dred dollars within the ten years. In *Bank* v. *Stark*, 106
Cal. 202, (39 Pac. 531,) it is held that: "A homestead is
abandoned by a deed of grant, executed by the husband
and wife, purporting to convey the land in *praesenti* to
the grantee, and to his heirs and assigns, upon the express
condition that the party of the second part shall make cer-
tain specified payments to the children of the grantees,
and that when the party of the second part, or his heirs
or assigns, shall have performed such conditions, the legal
title to the premises shall vest in him absolutely; and such
deed vests the title in the grantee upon condition subse-
quent, and the title is not affected by the reservation to the
grantors of the right to live in and occupy the house on the
premises, and to be supported and clothed out of the year-
ly proceeds of the premises so long as they should live."
The last clause of the contract in the case at bar, which
provides, "This grant, and the conditions, terms, and pro-
visions thereof, shall apply and extend to the said grantor
and grantee, their heirs, executors, administrators, and
assigns," indicates clearly that the parties intended that
some title should vest in the grantee at once, which he
could assign, or which would descend to his heirs, and that
on the performance of the conditions it should be com-
plete. "Whether a covenant is to be deemed precedent or
subsequent depends upon the intention of the parties, as
shown by the instrument, and not upon the use of any par-
ticular set of technical words." 2 Devl. Deeds, section

958. And the fourth clause makes clear the nature of the conditions as a condition subsequent: "If the grantee shall, as he may do at his option, omit to pay the said sum of $800, within the time aforesaid," then the grant should become absolutely null and void. I conclude therefrom that the grant conveys a defeasible title in fee to the gas and oil, which should, under section 25, chapter 29,, Code, by the assessor have been placed upon the land books, and charged with taxes thereon in the name of the grantee, and the assessment divided between the parties, grantor and grantee, equitably. This not having been done, was the payment of taxes by the grantor after the conveyance, on the whole property, sufficient to prevent a forfeiture of the interest so conveyed for nonentry on the land books for purposes of taxation? According to the agreed facts in the cause, the whole property was continued on the books in the name of the grantor, and not divided between the holders as provided for in said section 25, chapter 29, and the taxes on the whole regularly paid by the grantor for all the years 1892 to 1896, inclusive,—the years in which the said interests were left off the books. It has been frequently held in this State, and seems to be well settled, that the payment of taxes by one party, either the vendor or vendee, when that relation exists between them, neither asserting an independent or hostile title to the other, is a full satisfaction of the taxes legally chargeable upon the land, and the State could have no further claim for taxes against the land under the title thus held in privity and successively by the vendor and vendee. *Simpson* v. *Edmiston*, 23 W. Va. 675. But in the same case it is held that: "When two or more persons claim the same land under adverse titles or color of title, or either desires to protect his title from forfeiture, he must enter the land on the assessor's book in his name, and pay the taxes thereon. The payment of taxes on such land by an adverse claimant will not protect either titles from forfeiture. Each claimant must enter the land and pay the taxes on it in his own name." The object of the government is to collect from every one who claims title to land the taxes thereon, at a fair cash valuation. If claimants of hostile titles would protect the titles they claim, they must pay the taxes thereon. Where

there is privity of title, one payment is sufficient and full satisfaction, whether the land is charged in the name of one as a whole, or the various interests separated and charged to the respective owners, dividing the valuation equitably between or among them. In *Whitham* v. *Sayres*, 9 W. Va. 671, it is held that when the same land is charged by the assessor with taxes in the name of the grantor and his grantee, and the taxes paid by the grantee, if the land is sold for the nonpayment of taxes assessed against the grantor the purchaser at such sale acquires no title; and the same principle is held in *Bradley* v. *Ewart*, 18 W. Va. 598. "Payment of the taxes by the owner, or by any one entitled to make it, is an absolute defeat and termination of any statutory power to sell. The persons who, besides the owner, are entitled to make payment, are those who are assessed for the tax, and any others whose interests would be injuriously affected by a sale, either because of liens they may have, or of contract relation; and any one having the right may depute another to make it for him." Cooley, Tax'n, 322. In *Sturm* v. *Fleming*, 26 W. Va. 54, it is held that: "The payment of taxes on land by a purchaser thereof at a judicial sale, which is subsequently set aside and declared void, will be treated as a full satisfaction of all the taxes on said land for the time they shall have been so paid; and the owner of the land so sold will not forfeit his title thereto by reason of his not having had the land assessed and the taxes paid thereon in his name during the time the taxes were so paid by such purchaser." The same principle is held in *Hall* v. *Hall*, 27 W. Va. 468. See, also, *Lohrs* v. *Miller's Lessee*, 12 Grat. 452. For the reasons herein stated the decree is reversed, and the bill dismissed, as to the appellants.

*Reversed.*