## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Thomas A. Haynes,**
**Plaintiff Below, Petitioner**

**vs)  No. 15-1203** (Harrison County 14-C-145)

**Antero Resources Corporation and Eddie Rush Southern,**
**Defendants Below, Respondents**


## MEMORANDUM DECISION

Petitioner Thomas A. Haynes, by counsel Stephen A. Wickland, appeals the November 18, 2015, order of the Circuit Court of Harrison County that denied his motion to alter or amend the court's March 24, 2015, order. The March order granted summary judgment in favor of Respondent Antero Resources Corporation ("Antero") and Respondent Eddie Rush Southern ("Respondent Southern") in petitioner's action for declaratory judgment regarding the ownership of certain mineral rights. Antero, by counsel Amy M. Smith and Allison Farrell, filed a response. Respondent Southern did not file a response or join in Antero's response; however, Respondent Southern did participate in producing the joint appendix record filed in this appeal. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The mineral estate that is the subject of this appeal is located in Harrison County, West Virginia and originally belonged to Respondent Southern's grandfather, Edmond Southern, who leased the minerals by agreement entered on October 31, 1898. That lease has been held by production since that date. In time, Edmond Southern died and his interest in the minerals was divided into eight shares. One of those eight shares was vested in Edmond Southern's son, Presley Rush Southern. Presley Rush Southern died intestate in 1951; at his death, he held a $1/80^{th}$ interest in the subject minerals. Presley Rush Southern's four heirs each inherited an interest in that 1/80th share. The heirs were (1) Lorene T. LaGesse Southern, his "widow"; (2) John E. Southern, his "oldest son"; (3) Respondent Southern, his second son, and (4) Georgeanna L. Southern Bauer Gagnebin, his "daughter." The three children each inherited one-third of Pressley Rush Southern's 1/80th interest in the subject minerals, or a $1/240^{th}$ interest. However, that interest was subject to the widow's life estate interest.

From 1960 through 1987, the Harrison County Assessor assessed the tax on Presley Rush Southern's estate on only one tax ticket, as follows:

Against the widow: "1/80th Int. 213.35 As. O&G Gregory Run. . . ."
($450 assessment, taxes for a half year were $5.58)

For each of those twenty-eight years from 1960 through 1987, the tax ticket was paid in the widow's name. However, in 1988, three *additional* property tax assessments were issued with regard to the subject minerals, as follows:

Against the oldest son: "Interest 226 As. Leased O&G Gregory Run. . . ."
($300 assessment, taxes for a half year were $3.72)

Against Respondent Southern: "Int. 226 As. Leased O&G Gregory Run. . . ."
($300 assessment, taxes for a half year were $3.72)

Against the daughter: "Interest 196 As. Leased O&G Gregory Run. . . ."
($300 assessment, taxes for a half year were $3.72)

However, the widow's tax assessment remained on the tax books, as noted above. The widow's tax payment for the 1/80th interest assessed against her continued to be paid in her name from 1988 through 2004. In addition, the oldest son and the daughter paid their tax tickets; however, Respondent Southern did not pay his tax ticket.

In 1994, the Deputy Commissioner of Forfeited and Delinquent Land for Harrison County sold Respondent Southern's 1/240th interest in the minerals to petitioner's father, Robert A. Hayes, at a tax sale. The tax sale deed was recorded on June 27, 1994. Petitioner's father died on February 4, 2011. In his will, petitioner's father devised his interest in the minerals to petitioner. Petitioner claims that between 1994 and sometime in 2013, his father, and then he, received the royalties for the subject minerals. Petitioner claims that Respondent Southern received no royalties during this same time period and that petitioner or his father paid all taxes due on the royalties received.

In 2014, Antero began extracting minerals from the subject mineral estate. That same year, Antero paid Respondent Southern a 1/240th share of the royalties resulting from the drilling, and paid petitioner nothing.

Petitioner filed the instant declaratory judgment action on March 18, 2014, to determine title to the 1/240th interest in the mineral estate. Thereafter, in August of 2014, petitioner filed a motion for summary judgment. Both Antero and Respondent Southern responded with motions for summary judgment. Respondent Southern also joined Antero's motion. Following an October 14, 2014, hearing on the motions for summary judgment, the circuit court, by order entered March 24, 2015, granted summary judgment in favor of Antero and Respondent Southern and against petitioner. The circuit court found that, in 1984, the taxes assessed against the widow's 1/80th interest and the taxes assessed against Respondent Southern's 1/240th interest was a *double assessment*. The circuit court also found that because the taxes assessed against the widow from 1984 through 2004 were paid, Respondent Southern's taxes were not delinquent in 1994 when the tax sale occurred. Consequently, the circuit court concluded that the State was not entitled to

sell Respondent Southern's property to petitioner's father at a tax sale and that petitioner's tax deed was void as a matter of law.

On April 1, 2015, petitioner filed a motion to alter or amend judgment pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. Following a hearing on that motion, the circuit court, by order entered November 18, 2015, denied relief on the ground that petitioner failed to establish a basis to alter or amend the court's March 24, 2015, order. Petitioner now appeals the November 18, 2015, order.

"The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W.Va. 430, 431, 513 S.E.2d 657, 658 (1998). "'A circuit court's entry of summary judgment is reviewed de novo.' Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).' Syllabus point 1, *McGraw v. St. Joseph's Hospital*, 200 W.Va. 114, 488 S.E.2d 389 (1997)." Syl. Pt. 2, *id.*

Petitioner raises three assignments of error on appeal. Petitioner first argues that the circuit court erred in ruling that the tax on Respondent Southern's 1/240th interest was a double assessment of the tax assessed against the widow's 1/80th life estate interest. Petitioner also argues that the circuit court's reliance on *State v. Allen*, 65 W.Va. 335, 64 S.E. 140 (1909), and *State v. Low*, 46 W.Va. 451, 33 S.E. 271 (1899), is misplaced. Specifically, petitioner avers in his opening brief that

> [t]he Legislature amended statutes (West Virginia Code [§] 11-4-9) in 1992. The West Virginia Constitution was amended by ballot election held on November 3, 1992. The new statutes were codified as West Virginia Code 11A, Article 3, Sections 1 through 74[,] and Article 3, Sections 1 through 7 effective July 1, 1993.

Finally, petitioner argues that the tax sale of Respondent Southern's interest to petitioner's father was legally valid because West Virginia Code § 11-4-9 gives an assessor the discretionary authority to impose more than one assessment on a single parcel of real property where the owners' interests are separate and distinct.

We first note that petitioner never explains, in any fashion, how the amendments to the West Virginia Constitution or the referenced statutes effectively overrule *Allen* and *Low*. As we all too often have cautioned,

> a lawyer has a duty to plead and prove his case in accordance with established court rules. As the United States Court of Appeals succinctly stated in *Teague v. Bakker*, 35 F.3d 978 (4th Cir.1994), *cert. denied*, 513 U.S. 1153, 115 S.Ct. 1107, 130 L.Ed.2d 1073 (1995): "We would in general admonish all counsel that they, as officers of this Court, have a duty to uphold faithfully the rules of this Court." 35 F.3d at 985 n. 5. Further, "[a] skeletal 'argument', really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for

3

truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991); *accord Teague,* 35 F.3d at 985 n. 5; *State v. Honaker,* 193 W.Va. 51, 56 n. 4, 454 S.E.2d 96, 101 n. 4 (1994).

*State, Dep't of Health & Human Res., Child Advocate Office on Behalf of Robert Michael B. v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995). That said, this Court has not overruled *Allen* or *Low*. Thus, we find that the circuit court did not err in citing to those cases which address issues similar to those raised during the pendency of this case.

For example, in *Low*, the Court explained that,

[i]n *Whitham v. Sayers*, 9 W.Va. 671, it is held that when the same land is charged by the assessor with taxes in the name of the grantor and his grantee, and the taxes paid by the grantee, if the land is sold for the nonpayment of taxes assessed against the grantor the purchaser at such sale acquires no title; and the same principle is held in *Bradley v. Ewart*, 18 W.Va. 598. "Payment of the taxes by the owner, or by any one entitled to make it, is an absolute defeat and termination of any statutory power to sell. The persons who, besides the owner, are entitled to make payment, are those who are assessed for the tax, and any others whose interests would be injuriously affected by a sale, either because of liens they may have, or of contract relation; and any one having the right may depute another to make it for him." *Cooley, Tax'n*, 322.

46 W. Va. at 451, 33 S.E. at 274 (1899). A decade later, the Court in *Allen* held as follows:

The state is not entitled to double taxes on the same land under the same title.

In case of two assessments of the same land under the same claim of title for any year, one payment of taxes under either assessment is all the state can require.

Payment of taxes upon an assessment of a tract of land as a whole nullifies a tax sale of a parcel which has been conveyed therefrom and separately assessed for the same year.

Syl. Pts. 1, 2 and 3, 65 W.Va. at 335, 64 S.E. at 140. The *Allen* Court also stated that,

[b]y proceeding to sell land for nonpayment of taxes, the state is simply proceeding to enforce its lien on the land for those taxes. If the taxes have in fact been received by the state, even upon some other assessment of the same land, which it has made or at least recognized by receipt of the taxes thereunder, the lien has been relinquished. And where there is no lien there can be no valid sale.

65 W.Va. at 335, 64 S.E. at 142.

4

Here, the widow and Respondent Southern were assessed for the same interest under the same claim to title. Thus, the circuit court correctly determined that the taxes assessed against the widow and Respondent Southern were a double assessment. Despite this double assessment, the State could require only one payment for the subject mineral estate. That payment was made, in whole, by the widow. Consequently, the circuit court correctly determined that Respondent Southern's taxes were never delinquent and, therefore, the tax sale of Respondent Southern's interest in the subject minerals was void as a matter of law.

As for petitioner's statutory argument, West Virginia Code § 11-4-9, enacted in 1863 and last amended in 1935, provides that an assessor *may* impose more than one assessment on the same real property if the owners' interests are separate and distinct. However, West Virginia Code § 11-4-9 is not relevant to this case because the record on appeal clearly establishes that the widow's interest in the 1/80th share included Respondent Southern's 1/240th interest. Thus, the widow's interest was not separate and distinct from Respondent's interest. Accordingly, we find that the circuit court did not err in rejecting petitioner's West Virginia Code § 11-4-9 argument.

Petitioner's second assignment of error is that respondents failed to follow the statutory procedures for eliminating any double tax. Specifically, petitioner asserts that respondents could have eliminated any double tax assessment via an informal review by the tax assessor pursuant to West Virginia Code §11-3-23(a); by asking the county commission to review any double tax pursuant to West Virginia Code §11-3-24; or by asking the circuit court for relief pursuant to West Virginia Code §11-3-25. However, petitioner cites to no authority that required respondents to pursue a remedy by way of these Code sections. Further, respondents' decision not to pursue such remedies has absolutely no bearing on the circuit court's correct conclusions that Respondent Southern's taxes were never delinquent and, therefore, the tax sale was improper. Consequently, we find this assignment of error to be without merit.

In petitioner's third and final assignment of error, he argues that the circuit court erred (1) in failing to follow the ten-year statute of limitations on the recovery of real property found in West Virginia Code § 55-2-1; (2) in failing to set aside a tax deed filed in violation of West Virginia Code § 11A-4-2, which places a three-year statute of limitations on actions to set aside a tax deed when all taxes are paid before the sale, and (3) in failing to follow the assessor's record-keeping regarding assessments in violation of West Virginia Code § 11-3-1.

With regard to West Virginia Code § 55-2-1, although petitioner mentions it in his opening brief to this Court and in his reply to Antero's response, he fails to cite to the record on appeal when or how he raised this issue before the circuit court. Further, neither the November 18, 2015, order, nor the March 24, 2015, order mention this statute. As we stated previously, we are not pigs hunting for truffles. Therefore, we will not consider this issue further.

As for West Virginia Code § 11A-4-1, *et seq.*, it provides remedies for delinquent landowners who seek to set aside a tax sale deed resulting from procedural irregularities. In the order on appeal, the circuit court found that Article 4 of Chapter 11A does not apply to the instant case for the following reasons:

[Petitioner] appears to be conflating the law governing *void* tax deeds (*Allen*, *Low*) with the remedies available for setting aside *voidable* tax sale deeds (Section § 11A-4-1[,] *et seq.*). Voidable tax sale deeds are protected by a three-year statute of limitations for setting aside the tax sale deed by the defaulting landowner. Section 11A-4-2, 11A-4-3, 11A-4-4. In contrast, tax sale deeds that are the result of duplicate assessments are void ab initio and cannot be "saved" by a statute of limitations that never applied in the first instance. Unlike voidable tax sale deeds, void tax sale deeds do not have a statute of limitations. *MZRP, LLC v. Huntington Realty Corp.*, No. 35692, 2011 WV 12455342, at *4 (W.Va. March 10, 2011) ("While W.Va. Cod 11A-4-1, *et seq.*, enacted a three-year statute of limitations on voidable deeds created by procedural irregularities, there is no statute of limitations regarding void deeds.").

(Italics in original.) *See also Leslie Equip. Co. v. Wood Res. Co.*, 224 W.Va. 530, 543, 687 S.E.2d 109, 122 (2009) (Ketchum, J., concurring) ("Once void, always void."). We concur with these findings and, accordingly, reject petitioner's argument on this point.

Finally, petitioner raises his West Virginia Code § 11-3-1-based argument for the first time on appeal. We have oft said that

nonjurisdictional questions not raised at the circuit court level, but raised for the first time on appeal, will not be considered. *Whitlow v. Bd. of Educ. of Kanawha County*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993); *Shrewsbury v. Humphrey*, 183 W.Va. 291, 395 S.E.2d 535 (1990); *Cline v. Roark*, 179 W.Va. 482, 370 S.E.2d 138 (1988).

The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we have the benefit of its wisdom.

*Whitlow v. Bd. of Educ. of Kanawha County*, 190 W.Va. at 226, 438 S.E.2d at 18.

*Barney v. Auvil*, 195 W.Va. 733, 741–42, 466 S.E.2d 801, 809–10 (1995). Therefore, we do not consider petitioner's arguments with regard to this claim.

Accordingly, for the foregoing reasons, we affirm the circuit court's November 18, 2015, order that denied petitioner's motion to alter or amend the March 24, 2015, order that granted summary judgment in favor of Antero and Respondent Southern.

Affirmed.

**ISSUED:**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II