## IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**SUSAN A. WITTE, JACK GREGG HAUGHT,**
**and PAULA JEAN FREEMAN,**
**Plaintiffs Below, Petitioners**

**FILED**
**August 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-453**   (Cir. Ct. of Tyler Cnty. Case No. CC-48-2021-C-9)

**BEVERLY A. FACTOR, TERRANCE L. KOESTER,**
**and ANTERO RESOURCES CORPORATION,**
**Defendants Below, Respondents**

### MEMORANDUM DECISION

Petitioners Susan A. Witte, Jack Gregg Haught, and Paula Jean Freeman appeal two orders from the Circuit Court of Tyler County. First, they appeal the September 23, 2024, order granting summary judgment in favor of respondents Beverly A. Factor, Terrance L. Koester, and Antero Resources Corporation ("Antero"). Petitioners also appeal the October 15, 2024, order denying their motion to alter or amend the September 23, 2024, order. Respondents filed a joint response.[1] Petitioners filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case rests on a dispute over ownership interests to certain oil and gas underlying approximately 255 acres in Tyler County (the "Subject Property"). The issue on appeal is purely a question of law and the facts of this case are not in dispute. According to the circuit court's September 23, 2024, summary judgment order, the facts are as follows.

---

[1] Petitioners are represented by Matthew G. Stott, Esq., Stott Legal Services, PLLC. Terrance L. Koester is represented by Edmund L. Wagoner, Esq., and Matthew B. Hansberry, Esq., Hansberry & Wagoner, PLLC. Beverly A. Factor is represented by Richard M. Marsh, Esq., Flaherty Sensabaugh & Bonasso, PLLC. Antero Resources Corporation is represented by Lauren K. Turner, Esq., Shaina L. Richardson, Esq., and Addison M. O'Rourke, Esq., Steptoe & Johnson, PLLC.

In 1910, John Woodburn owned the Subject Property, which is located in the Ellsworth District of Tyler County. In March 1910, John Woodburn sold or conveyed the Subject Property's surface tracts to his children in approximately equal shares; specifically:

1. To William A. Woodburn, Tax Map 20, Parcel 97, being a tract of land containing approximately 66 acres and 135 poles, with the conveying deed of record in Deed Book 68, Page 182.
2. To Charles C. Woodburn, Tax Map 26, Parcel 1, being a tract of land containing approximately 61 acres and 125 poles, with the conveying deed of record in Deed Book 69, Page 381 ("Charles Woodburn Tract").
3. To Ivy May Leonard, Tax Map 26, Parcel 2, being a tract of land containing 63 acres and 64 poles, with the conveying deed of record Deed Book 69, Page 464.
4. To Sarah Agnes Mayfield, Tax Map 26, Parcel 3, being a tract of land containing approximately 63 acres and 3 poles, with the conveying deed of record in Deed Book 69, Page 665.

In these conveyances, John Woodburn reserved the Subject Property's entire mineral interest to himself for life. Upon his death on October 25, 1910, the Subject Property's mineral rights passed equally to his children William, Charles, Ivy, and Sarah, in undivided shares of one-fourth interest each.

On December 23, 1929, Charles Woodburn and Celia Woodburn, his wife, conveyed the Charles Woodburn Tract to R.A. Hoskinson (the "1929 Conveyance") with the following reservation:

[T]he one-half of the one-fourth of the one-eighth royalty oil and the one-half of the one-fourth of the consideration paid for gas and gasoline in and underlying this and all the land that was conveyed to the parties of the first part and William A. Woodburn, Sarah Agnes Mayfield, and Ivy May Leonard by that deed made by John Woodburn, their father, [in Deed Book 69, Page 381].

Through the 1929 Conveyance, Charles Woodburn retained a one-eighth mineral interest in the Charles Woodburn Tract, and a one-fourth mineral interest in the remainder of the Subject Property. R.A. Hoskinson received the surface of the Charles Woodburn Tract along with a one-eighth interest in the tract's mineral interest.

Prior to the 1929 Conveyance, the county land books assessed Charles Woodburn for a one-fourth interest in the minerals underlying his tract. However, in 1931, Charles Woodburn's oil and gas interest in the Subject Property was incorrectly reduced to one-eighth interest in the entire Subject Property, or "1/8 255 7 B Sancho Cr." At the same time, R.A. Hoskinson was incorrectly assessed with an identical oil and gas entry in the

2

land books being "1/8 255 7 B Sancho Cr," or a one-eighth interest in the entire Subject Property. There remained two similar assessments from 1948 onward with R.A. Hoskinson and Charles Woodburn being separately assessed with "1/8 Roy 255A 7P Woodburn Estate."

In 1948, Charles Woodburn's assessment became delinquent. However, R.A. Hoskinson's assessment was paid in full. On December 12, 1949, Harvey Haught purchased Charles Woodburn's delinquent tax lien and was conveyed that interest by tax deed dated June 22, 1951 ("1951 Deed"). The 1951 Deed makes no reference to which property was being conveyed other than generally stating that the real estate assessed in the name of Charles Woodburn had become delinquent.

By deed dated March 20, 1939 ("1939 Deed"), R.A. Hoskinson conveyed his one-eighth interest to the oil and gas underlying the Charles Woodburn Tract to Ivan Moore. R.A. Hoskinson continued to be assessed with "1/8 Roy 255A 7P Woodburn Estate" from 1931 until 1950 when the assessment was removed and transferred to Ivan Moore. At all relevant times, the taxes on the Hoskinson/Moore assessments were paid in full and kept current.

Harvey Haught died on November 20, 1968, and through subsequent conveyances, petitioners are the successors in interest to 100% of Harvey Haught's interest in the Subject Property.[2] All the deeds in petitioners' chain of title state that the interest conveyed is "1/8."

Charles Woodburn died on August 31, 1980, and his interest was vested equally between his two daughters, Beverly Factor and Linda Marie Koester. When Linda Marie Koester died on April 26, 2017, her interest passed to her husband, Terrance L. Koester. It is agreed that Beverly Ann Factor and Terrance L. Koester each own an equal one-half interest in the portion of the Charles Woodburn Tract excepted from the 1951 Deed.

Pursuant to lease agreements with the parties, Antero has drilled and produced from the oil and gas wells underlying the Subject Property and lands which were pooled or utilized therewith.

On July 16, 2021, petitioners filed their complaint seeking a declaratory judgment as to the ownership of the Subject Property's oil and gas. Petitioners contend that under the 1951 Deed, Harvey Haught received 100% of Charles Woodburn's oil and gas interest in the Subject Property, being one-eighth of the Charles Woodburn Tract and one-fourth of the remainder of the Subject Property.

---

[2] Specifically, it is undisputed that Jack Gregg Haught holds a one-half interest. Paula Jean Freeman and Susan A. Witte each hold a one-fourth interest.

3

On February 23, 2024, respondents filed a joint motion for summary judgment. Respondents contend that because the R.A. Hoskinson assessment was a valid assessment and remained paid, Harvey Haught could not acquire the interest, and that Charles Woodburn retained, through his death, one-eighth of the oil and gas underlying the William Woodburn, Ivy Leonard, and Sarah Mayfield tracts. After considering the matter, the circuit court emailed the parties, advising them that it was granting respondents' motion for summary judgment, and directing respondents' counsel to prepare a proposed summary judgment order for entry. Petitioners contend that the circuit court entered respondents' proposed order verbatim.

In its summary judgment order, the circuit court determined that the only substantive issue was the size of the oil and gas interest acquired by Harvey Haught when he purchased Charles Woodburn's delinquent assessment. In other words, the dispositive issue was whether the 1951 Deed conveyed Charles Woodburn's entire interest and not simply the one-eighth interest assessed in his name that became delinquent in 1948. On this issue, petitioners claim Mr. Haught acquired Charles Woodburn's entire interest—one-eighth of the oil and gas underlying his former tract and one-fourth of the oil and gas underlying the remainder of the Subject Property—while respondents contend that he only acquired the interest assessed to Charles Woodburn in 1948: the one-eighth interest in the oil and gas underlying the entire Subject Property.

The circuit court found that all the operative facts were contained within the county's land books and deed records, and that those materials were matters of public record and subject to judicial notice pursuant to the West Virginia Rules of Evidence. The court also found that petitioners "have put forth no evidence to contradict the public records before this [c]ourt and there is no issue of material fact." Thereafter, the circuit court concluded as follows:

1. Any person with an interest in land may pay assessments for others with interests in the same land. W. Va. Code § 11A-1-9.
2. "There is a presumption of entry of land for taxation and payment of taxes thereon in favor of the owner and persons claiming under him, which stands until overthrown by proof to the contrary." Syl. Pt. 1, *State v. Bear Mountain Coal Co.*, 99 W. Va. 183, 128 S.E. 84 (1925); *see also* W. Va. Code § 11A-2-17 (providing for a presumption of payment of taxes "[w]henever a tax is charged to any person or assessed against any property and the name of the person charged or the property assessed does not appear in the proper delinquent list"). "[T]here is a presumption against the forfeiture for non-entry and non-payment of taxes, which relieves a plaintiff in a proceeding for vindication of his title from showing payment of taxes until impeaching evidence has been adduced by defendant." *Prickett v. Frum*, 101 W. Va. 217, 223, 132 S.E.501, 503 (1926).

4

3. "In cases of two assessments of the same land under the same claim of title for any year, one payment of taxes under either assessment is all the state can require." Syl. Pt. 3, *L & D Invs., Inc. v. Mike Ross, Inc.*, 241 W. Va. 46, 818 S.E.2d 872 (2018) (quoting Syl. Pt. 2, *State v. Allen*, 65 W. Va. 335, 64 S.E. 140 (1909)).

4. The State is only entitled to one payment of taxes, regardless of how many assessments of the same tax that there are and cannot sell tax liens upon property for which it has already been paid. *See* Syl. Pt. 3, *L & D Invs., Inc.*, 241 W. Va. at 46, 818 S.E.2d at 872; Syl. Pt. 2, *Allen*, 65 W. Va. at 335, 64 S.E. at 140; *Haynes v. Antero Resources Corp.*, 2016 WL 6542734 at *2 (W. Va. Oct. 28, 2016) (memorandum decision); *Hill v. Lone Pine Operating Co.*, 2016 WL 6819787 at *2 (W. Va. Nov. 18, 2016) (memorandum decision).

5. In 1948, there were two assessments covering the interest of Charles Woodburn in the Subject Property. One in his name for "1/8" and the other in R. A. Hoskinson's name for "1/8."

6. In 1948, both Charles Woodburn and R. A. Hoskinson owned an interest in the oil and gas and were entitled to have those interests assessed and pay the taxes on that interest.

7. Both assessments were valid and proper assessments on the respective interests–the R. A. Hoskinson assessment on one-half of Charles Woodburn's prior interest in the Subject Property, and the Charles Woodburn assessment on the other one-half.

8. The Charles Woodburn assessment, covering a portion of the interest owned by Charles Woodburn, went unpaid for 1948 and the State was entitled to sell it.

9. The R. A. Hoskinson assessment remained on the land books well beyond 1948 and was presumptively paid for 1948 and thereafter pursuant to W. Va. Code § 11A-2-17.

10. The Plaintiffs have presented no evidence that the R. A. Hoskinson assessment was not paid.

11. Because the R. A. Hoskinson assessment remained paid and valid after the 1951 tax sale, Charles Woodburn retained his one-eighth interest in the oil and gas underlying the Subject Property, less the Charles Woodburn tract.

12. Harvey Haught did not acquire the one-eighth interest in the Subject Property that was covered by the R. A. Hoskinson assessment, which continues to be paid to this day.

13. As the successors to Harvey Haught, the [c]ourt concludes that the Plaintiffs, Jack Gregg Haught, Susan A. Witte and Paula Jean Freeman own an undivided one-eighth of the oil and gas underlying all four surface parcels comprising the Subject Property.

5

14. As the successors to the interests of Charles Woodburn not subject to the 1951 tax deed, the [c]ourt concludes that the Defendants, Beverly Ann Factor and Terry Koester own an undivided one-eighth underlying all of the Subject Property except the Charles Woodburn Tract.

In its summary judgment order, the circuit court found the parties held the following ownership interests in the Subject Property:

| Owner | Map 20, Parcel 97 | Map 26, Parcel 1 | Map 26, Parcel 2 | Map 26, Parcel 3 |
|---|---|---|---|---|
| Jack Gregg Haught | $1/16^{th}$ | $1/16^{th}$ | $1/16^{th}$ | $1/16^{th}$ |
| Susan Witte | $1/32^{nd}$ | $1/32^{nd}$ | $1/32^{nd}$ | $1/32^{nd}$ |
| Paula J. Freeman | $1/32^{nd}$ | $1/32^{nd}$ | $1/32^{nd}$ | $1/32^{nd}$ |
| Terrance L. Koester | $1/16^{th}$ | 0 | $1/16^{th}$ | $1/16^{th}$ |
| Beverly Ann Factor | $1/16^{th}$ | 0 | $1/16^{th}$ | $1/16^{th}$ |

On September 23, 2024, petitioners filed a motion to alter or amend the summary judgment order. In that motion, petitioners did not challenge the circuit court's ultimate decision, but rather, the motion merely asserted in cursory fashion that the circuit court's summary judgment order lacked sufficient findings of fact and conclusions of law. The circuit court denied this motion by order dated October 15, 2024, finding it had entered a detailed summary judgment order with adequate findings of facts and conclusions of law. This appeal followed.

We apply a de novo standard of review to both orders on appeal. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); *W. Va. Fire & Cas. Co. v. Mathews*, 209 W. Va. 107, 111, 543 S.E.2d 664, 668 (2000) (A de novo standard of review applies to appeal of order denying motion to alter or amend summary judgment).

In conducting a de novo review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser*, 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting Syl. Pt. 2, *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for

6

a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337 (quotations and citations omitted).

On appeal, petitioners allege multiple errors to challenge the circuit court's entry of summary judgment. However, as explained below, we find none of petitioners' arguments availing.

First, petitioners argue that the court erred by failing to address their argument that the decision of the Supreme Court of Appeals of West Virginia ("SCAWV") in *State v. Low*, 46 W. Va. 451, 33 S.E. 271 (1899), created a three-part test for "void ab initio" tax deeds. Specifically, petitioners submit that *Low* creates a bright-line rule which requires the following elements: (1) multiple real estate assessments; (2) payment of the assessment by the grantor or grantee, or grantee of the interest; and (3) payment under the same claim of title to the particular interest. According to petitioners, because R.A. Hoskinson was not a grantee or grantor, nor did he claim right or title to the disputed property, the second and third *Low* elements cannot be satisfied and, thus, his payment of taxes for his one-eighth interest did not protect Charles Woodburn's one-eighth interest from the delinquent tax lien purchased by Mr. Haught. Conversely, respondents contend that *Low* stands for no such proposition. We agree with respondents.

On this issue, petitioners fail to directly cite the language in *Low* that they believe supports their argument. Instead, petitioners simply offer this Court their interpretation of *Low* and how they believe it should be applied to the facts of this case. As presented, this argument does not comply with our Rules of Appellate Procedure. *See* W. Va. R. App. P. 10(c)(7) ("The brief must contain an argument clearly exhibiting the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error."). Furthermore, while the order was prepared by respondents and adopted verbatim by the circuit court, there is no indication from the record that petitioners filed any objection to the order pursuant to Rule 24.01(c) of the West Virginia Trial Court Rules.[3]

---

[3] This Rule states:

Although it is preferred that orders be entered in accordance with subsection (b), unless the judicial officer otherwise directs, counsel responsible for the preparation and presentation of an order may submit the original of the proposed order to the judicial officer within eleven (11) days, with a copy to opposing counsel along with a notice to note objections and exceptions to the order within five (5) days after receipt of the proposed order or such lesser time as the judicial officer directs. Opposing counsel shall notify the presiding judicial officer, in writing, of his or her approval of or objection to the order or any portion thereof. In the event this subsection is utilized, the judicial officer shall consider the order for entry upon approval by all

7

Nevertheless, this Court has taken great care to scrutinize the SCAWV's ruling in *Low*, and after doing so, we find no language in that decision to support petitioners' contention the decision states a three-part test, let alone establishes a bright-line rule. Instead, as part of its decision, the SCAWV noted that in prior cases it held:

> [T]hat when the same land is charged by the assessor with taxes in the name of the grantor and his grantee, and the taxes paid by the grantee, if the land is sold for the nonpayment of taxes assessed against the grantor the purchaser at such sale acquires no title[.]

*Low*, 46 W. Va. at 459, 33 S.E. at 274 (citations omitted). However, this language neither establishes a bright-line rule, nor did it control the issues presented in *Low*. Rather, the SCAWV made this observation before contrasting this language by finding that the "[p]ayment of the taxes by the owner, or by any one entitled to make it, is an absolute defeat and termination of any statutory power to sell." *Id*. This latter point was the dispositive point of law to the issues presented in *Low*. Moreover, because the former language had no bearing on the SCAWV's decision in *Low*, it is at best, dicta. As such, we conclude that petitioners' interpretation and reliance upon *Low* is misplaced; therefore, the circuit court did not err by not addressing petitioners' *Low* argument.

Next, petitioners contend that the circuit court erred because it took judicial notice of Tyler County's deed and land book records to arrive at its decision, concluding that they were reliable public records. According to petitioners, this was inappropriate at the summary judgment stage pursuant to Rule 56 of the West Virginia Rules of Civil Procedure.[4] This argument is untenable.

Indeed, it is common knowledge that recorded deeds and land book records are maintained by the county clerk, and that those documents are matters of public record. *See Springer v. Runyan*, No. 22-586, 2024 WL 2273398, at *5 (W. Va. May 20, 2024) (memorandum decision) (recognizing that a recorded deed was a matter of public record). Moreover, a court's ability to take judicial notice of adjudicative facts is governed by Rule 201 of the West Virginia Rules of Evidence. This Rule unequivocally states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." W. Va. R. Evid. 201(b). Further, a court "may take judicial notice on its own," and it "may

---

> counsel, or after five (5) days from its receipt, if no objection is received by the judicial officer.

[4] The circuit court's proceedings were governed by the version of Rule 56 adopted by the Supreme Court of Appeals of West Virginia in 1998. While Rule 56 was amended by the Court, effective January 1, 2025, no changes were made that affect this appeal.

take judicial notice at any stage of the proceeding." W. Va. R. Evid. 201(c)(1) and (d); *see also* Syl. Pt. 1, *Aluise v. Nationwide Mut. Fire Ins. Co.*, 218 W. Va. 498, 625 S.E.2d 260 (2005) ("Rule 56(c) of the West Virginia Rules of Civil Procedure does not contain an exhaustive list of materials that may be submitted in support of summary judgment. . . . [A] trial court may consider any material that would be admissible or usable at trial.").

In this case, petitioners do not assert that the county records judicially noticed by the circuit court fail to meet the requirements of Rule 201(b), but rather, they contend that judicial notice is not appropriate at summary judgment. This argument cannot survive the plain language of Rule 201(d), which permits a court to take judicial notice at any stage in the proceeding. Based upon our review of the record, and as explained more fully below, we agree with the circuit court's observation that petitioners made no discernable effort to overcome this evidence and failed to adequately oppose the pending motion for summary judgment. Thus, we conclude that the accuracy of these public records cannot reasonably be questioned.

We are also not persuaded by petitioners' contention that respondents' motion for summary judgment was based solely upon a half-page document from the county's 1949 land book to establish that R.A. Hoskinson was assessed and paid the 1948 taxes on his one-eighth interest. While this was the only exhibit attached in support of the motion, respondents' memorandum in support of the motion is replete with reference and citation to the various county records, which were ultimately judicially noticed by the circuit court and identified in the order on appeal. Moreover, to the extent respondents' attached county record was unverified or incomplete, those issues were rectified when the court took judicial notice in this case and found the relevant county records as a whole, to be accurate and reliable. *See IPI, Inc. v. Axiall Corp.*, 249 W. Va. 544, 560, 897 S.E.2d 572, 588 (Ct. App. 2024) (quoting Syl. Pt. 6, *Butner v. Highlawn Mem'l Park Co.*, 247 W. Va. 479, 881 S.E.2d 390 (2022)) ("[I]n its discretion the court may consider an unsworn and unverified document if it is self-authenticating under West Virginia Rule of Evidence 902 or *otherwise carries significant indicia of reliability*[.]") (emphasis added). Therefore, we conclude that the circuit court acted within its authority when it took judicial notice of the pertinent deed and land book records to determine the ownership interest Mr. Haught acquired when he purchased one of two 1948 assessments for "1/8 Roy 255A 7."

Lastly, petitioners argue that even if the circuit court was not required to consider *Low* and was entitled to take judicial notice, the court still erred by concluding that respondents were entitled to summary judgment. Specifically, petitioners argue that the circuit court's application of the law to the facts is misplaced because none of the records relied upon by the circuit court establish that R.A. Hoskinson legally held one of two one-eighth interests identified by the 1948 assessment along with Charles Woodburn's interest. According to petitioners, there is no document vesting title with R.A. Hoskinson, and, as a result, it can only be concluded that Mr. Haught acquired all of Charles Woodburn's

interest when he purchased the delinquent tax lien and was issued the 1951 Deed. This argument is unpersuasive.

As part of our de novo review, our first task is to evaluate whether respondents met their burden of demonstrating the absence of a genuine issue of material fact. In its order, the circuit court set forth factual findings, including a detailed recitation of the relevant county records and the established precedent and statutory authority applicable to the legal issue presented at summary judgment. After reconciling the matter, the court determined that respondents' motion was properly supported by affirmative evidence establishing that there was no genuine issue of material fact. Upon review, we agree with the circuit court and conclude that respondents' motion for summary judgment met this threshold showing. Subsequently, the burden shifted to petitioners to oppose summary judgment through more than a *mere scintilla of evidence*. To meet this burden, the SCAWV has stated:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)[5] of the West Virginia Rules of Civil Procedure.

*Williams*, 194 W. Va. at 56, 459 S.E.2d at 333, syl. pt. 3. The nonmoving party must also present *evidence* that contradicts the showing of the moving party by pointing to specific facts demonstrating that there is a trial-worthy issue which is not only a genuine issue but also is an issue that involves a material fact. *Id.* at 60, 459 S.E.2d at 337 (emphasis added). Moreover, the nonmoving party cannot create a genuine issue of material fact through mere speculation or building of one inference upon another. *Id*. at 61 n.14, 459 S.E.2d at 338 n.14.

In this case, the circuit court determined that respondents had established that in 1948 Charles Woodburn and R.A. Hoskinson were each assessed for an identical one-eighth oil and gas ownership interest, and because R.A. Hoskinson's assessment remained on the county's land books beyond 1948 and the issuance of the 1951 Deed, the totality of the circumstances presumptively established that R.A. Hoskinson's assessment was valid and that the taxes remained paid. According to the circuit court, the import of this finding was that under state law, Mr. Hoskinson's payment of the assessment for a one-eighth interest protected that entire one-eighth interest from tax sale, including the three-fourths of that one-eighth interest owned by Charles Woodburn. In contrast, when the one-eighth interest assessed to Charles Woodburn became delinquent and was sold, the 1951 Deed to

---

[5] We note that under the 2025 amendments, the former Rule 56(f) has been renumbered as Rule 56(d); *see* n.4, supra.

Mr. Haught conveyed that interest only: a one-eighth interest in the oil and gas underlying the entire Subject Property. As a result of this showing, the burden shifted to petitioners to sufficiently resist summary judgment. The circuit court expressly found that petitioners failed to meet their burden because they presented no evidence that Mr. Hoskinson's tax assessment was not paid. We agree with the circuit court's observation.

As established by precedent, in order to resist respondents' motion, petitioners were required to either rehabilitate the evidence, produce additional evidence showing a genuine issue of material fact, or file an affidavit for further discovery. However, petitioners failed to do so. Specifically, there is no affidavit in the record from petitioners seeking further discovery, and petitioners' response in opposition to summary judgment neither rehabilitates the evidence, nor produces additional evidence to sufficiently establish a genuine issue of material fact. Rather, in support of their opposition to summary judgment, petitioners simply offer the overarching claim that respondents' position is factually inaccurate and without evidentiary support. Similarly, instead of offering sufficient evidence to establish a genuine issue of material fact, petitioners pose a litany of hypothetical questions that they believe create genuine issues regarding the R.A. Hoskinson assessment, his subsequent payment of taxes, and whether his payment of taxes protected the disputed portion of Charles Woodburn's interest. However, petitioners postulate these theories without providing any evidence to support them. Simply put, petitioners' offer of conjecture that there are factual disputes in this case is insufficient to resist summary judgment. *See Williams*, 194 W. Va. at 61, 459 S.E.2d at 338 (citations omitted) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *Harbaugh v. Coffinbarger*, 209 W. Va. 57, 62, 543 S.E.2d 338, 343 (2000) ("[T]he party opposing the summary judgment motion 'must do more than simply show that there is some metaphysical doubt as to the material facts.' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)."); *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W. Va. 692, 700, 474 S.E.2d 872, 880 (1996) ("Rule 56 does not impose upon the circuit court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Nor is it our duty to do so on appeal."). Therefore, we cannot conclude that the circuit court erred in its determination that summary judgment was appropriate in this case.

Accordingly, we affirm the circuit court's September 23, 2024, and October 15, 2024, orders.

Affirmed.

**ISSUED:** August 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

12