# CHARLESTON.

## STATE v. ALLEN *et al.*

Submitted March 17, 1908.   Decided March 16, 1909.

| 65 | 335 |
|----|-----|
| 66 | 113 |
| 66 | 266 |

1. TAXATION—*Double Taxation.*
    The State is not entitled to double taxes on the same land under the same title. (p. 339.)

2. SAME—*Sufficiency of Payment.*
    In case of two assessments of the same land, under the same claim of title, for any year, one payment of taxes, under either assessment, is all the State can require. (p. 339.)

3. SAME—*Payment of Taxes—Double Taxation.*
    Payment of taxes, upon an assessment of a tract of land as a whole, nullifies a tax sale of a parcel which has been conveyed therefrom and separately assessed for the same year. (pp. 339, 340.)

Appeal from Circuit Court, Cabell County.

Bill by the State against Samuel V. Allen and others. Decree for R. E. Vickers, petitioner, and defendant Pauline H. Huffington appeals.

*Reversed and Remanded.*

SIMMS & ENSLOW, for appellant.

GEO. J. MCCOMAS, for R. E. Vickers.

ROBINSON, JUDGE:

A tract of land embracing 95⅝ acres, in the city of Huntington, was owned by Garland Buffington in 1891. From it, in that year, the owner conveyed to Elizabeth Higgins a small parcel, describing it by metes and bounds, and, further, as "being part of what would be Lot 1 of Block 290." Contiguous to the 95⅝ acre tract lay land belonging to the Central Land Company which had been platted as an addition to said city. Lot 1 of Block 290 of that addition, adjoining the Buffington tract,

was incomplete, according to the plan of the addition, unless that plan should be extended into the tract of 9⅝ acres. The applicability of the latter description of the parcel sold to Elizabeth Higgins out of the Buffington tract was, therefore, contingent upon the extension of the plan of the aforesaid survey and the completion of Lot 1 of Block 290. But the extension was not in fact made. Lot 1 of Block 290 was, as we have stated, a lot on the official and recorded plan of the Central Land Company's addition to said city. As such lot, adjoining the 9⅝ acre tract and immediately contiguous to the parcel conveyed to Higgins, it had an official designation, as will be seen by reference to the recorded plat. Yet no such official designation ever made the Higgins parcel to become a part of Lot 1 of Block 290. That name was given it only by the aforesaid deed to Higgins. On the land-book no deduction for the portion of the 9⅝ acres conveyed to Higgins as aforesaid was made from the assessment of the Buffington tract. The 9⅝ acre tract continued to be assessed as a whole. The parcel conveyed to Higgins was entered for taxation on the land-book in her name, as "part of Lot 1 of Block 290." Garland Buffington conveyed the residue of the 9⅝ acres, in 1892, to other parties. Still the assessment of the original tract of 9⅝ acres as a whole continued on the land-book in his name. In 1893, the Higgins parcel was reconveyed to Garland Buffington, and, described as "part of Lot 1 of Block 290," was charged with taxes in his name. He again conveyed it, but assessment of the Higgins parcel continued on the land-book in his name, notwithstanding subsequent conveyances thereof. So assessment of the whole tract of 9⅝ acres continued on the land-book in his name, as former owner thereof; and assessment of the Higgins portion of the 9⅝ acres continued on the land-book in his name, as former owner of it, also. The taxes on said assessment of the whole tract of 9⅝ acres were at all times paid by the owners of the residue of the 9⅝ acres. And during the year 1896 at least one of the two parties owning the said residue also had ownership of the Higgins parcel, subject to the deed of trust hereinafter mentioned. However, for the year 1896 the taxes on the assessment of the Higgins parcel became delinquent, and upon such delinquency, the said lot was sold to the State, as "part of Lot 1 of Block 290," and was not

redeemed. It was thereafter, by such description only, brought into this suit for the sale of forfeited lands for the benefit of the school fund. A decree directed the sale of "part of Lot 1 of Block 290." R. E. Vickers became the purchaser. A deed was made to him by the commissioner of school lands. That deed conveyed "Lot 1 of Block 290."

During the time that Elizabeth Higgins owned the parcel conveyed to her, as aforesaid, she executed a deed of trust thereon, and, notwithstanding the subsequent conveyances of that parcel, the same was sold under this deed of trust. Title thereto by such sale became vested in Pauline H. Buffington, who entered into possession of the same. She was in possession of the same, and her deed therefor was of record, at the time of the institution of this suit for the sale of that parcel as forfeited land. Yet she was not made a party to the suit or proceeding. Vickers, the aforesaid purchaser, failing to oust her from possession by an action of ejectment, because his deed called for "Lot 1 of Block 290," which we have seen was entirely different property, filed his petition herein, praying that he be given a deed for the land purchased by him as aforesaid, containing a description by the metes and bounds which he set out as the correct ones of the lot of which he alleged he became such purchaser. This description was a particular one of the Higgins parcel, and one that had not appeared in the suit or proceedings upon which he claimed title. To this petition Pauline H. Buffington was made a party. She thereupon answered, denying his right to relief in the premises. She asserted that her property had not been sold, as aforesaid, and purchased by Vickers; that it was a part of the 9⅝ acres and that it had been duly charged with taxes as such and that the taxes had been actually paid thereon for the year of the alleged delinquency upon which the Vickers purchase rested; that the said property of which she was in possession, and to which Vickers claimed title and prayed for a deed, never was a part of Lot 1 of Block 290; that such numbered lot was one belonging to the Central Land Company's addition, adjoining her property, but that her parcel was never part thereof; that her property, as designated in her deed for the same, was not described or set out in this suit for the sale of forfeited land prior to the filing of the petition of Vickers; and that all taxes thereon had been paid under its

assessment as a part of the 95⅝ acres. She denied that by the alleged delinquency the State ever acquired any title to the Higgins parcel owned by her, and that, therefore, Vickers acquired no title thereto. She prayed for relief consistent with her situation in the premises—that the deed to Vickers be held to interfere in nowise with or affect her said property, and that her possession of the same be quieted. The relief prayed for by Vickers was granted; that prayed for by Pauline H. Buffington was denied. The latter has, therefore, appealed.

It clearly appears that the Higgins lot was never a part of what was actually Lot 1 of Block 290. By no survey or merger of title had the two become one. The latter was a certain and definite lot on the said recorded plat. It belonged to Josie G. Smith, who had possession of the same. There was no extension of this plat so as to include the Buffington tract of 95⅝ acres. If there had been, it was supposed that the Higgins parcel would complete said Lot 1 of Block 290 or become a part of it. The deed to Higgins did not call the parcel conveyed thereby merely a part of Lot 1 of Block 290, but called it, after using definite bounds, "part of *what would be* Lot 1 of Block 290." So it is indeed doubtful whether it can be said that an entry on the land-book as "part of Lot 1 of Block 290" related to the Higgins parcel. Did it not in fact relate to that which was really such numbered lot, having an official and recorded existence? One may surmise that it was intended to relate to the Higgins parcel, since Garland Buffington's name was connected with such assessment. Is such uncertain, if not to say mistaken, description sufficient? We need not say. For certain it is that it appears that there was an assessment of the Higgins parcel, and an actual payment of taxes thereon, by its inclusion in the assessment of the original tract of 95⅝ acres. In the agreed statement of facts in the case, it is conceded that there was such assessment of the whole, and payment of taxes thereon, for the year of the delinquency under which Vickers claims. And it is shown that this payment of taxes was by the owners of the larger tract, one of whom owned the Higgins parcel. Then did the delinquent return of "part of Lot 1 of Block 290," and the sale to the State thereunder vest any title which could be acquired by Vickers? · Granting that the separate assessment of a "part of Lot 1 of Block 290" was clearly an assessment of the

Higgins parcel, we answer the question in the negative. The State received its taxes on the Higgins parcel by a payment on the whole tract by a party interested in both, for the very year as to which it proceeded to sell that parcel. The receipt of these taxes by the State saved the Higgins parcel from delinquency.

There was no hostility between the title to the whole and that of the parcel. The title to the latter was the same as that to the former, having been derived from the same source. And "where there is privity of title one payment is sufficient and full satisfaction, whether the land is charged in the name of one as a whole, or the various interests separated and charged to the respective owners, dividing the valuation equitably between or among them." *State* v. *Low,* 46 W. Va. 451. "The State is not entitled to double taxes on the same land under the same title. A man cannot be held to lose his estate under the rigid principles applicable to tax titles from such an unjust cause." *Boggess* v. *Scott,* 48 W. Va. 321. There was a double assessment of the property. In such case one payment of taxes, under either assessment, is all that the State could require. *Gerke Brewing Co.* v. *St. Clair,* 46 W. Va. 93.

Actual delinquency is a condition precedent to the right to sell land under a tax assessment. There is no such delinquency when the taxes have in fact been paid, by the owner himself or by any other person entitled to make such payment. It is plain that an owner of the residue of the 95⅝ acres was entitled to pay the taxes charged against the whole tract, since he clearly had an interest in the whole to the extent of all of it but the Higgins parcel, included in the assessment thereof. And then, one of the owners of that residue, for the year of the payment, owned the Higgins parcel. Such person was entitled to make payment of the taxes assessed upon the whole acreage with the effect to render the subsequent sale of the Higgins parcel invalid. Black on Tax Titles, sections 156 and 161.

By proceeding to sell land for non-payment of taxes, the State is simply proceeding to enforce its lien on the land for those taxes. If the taxes have in fact been received by the State, even upon some other assessment of the same land, which it has made or at least recognized by receipt of the taxes thereunder, the lien has been relinquished. And where there is no lien there can be no valid sale. By its receipt of the taxes

under the assessment of the whole tract, which included the Higgins parcel, the State was estopped to deny the validity of that assessment in its relation to the Higgins parcel, and was estopped from proceeding further toward collection of taxes on that parcel, even under color of the separate assessment for the same year. Its lien was released; it had none that it could enforce. Its subsequent sale of the Higgins parcel to itself, for non-payment of taxes thereon, was a falsehood and a nullity. Equity, in whose forum the parties now are, countenances neither untruth nor enforces invalidity.

The tax sale upon which Vickers claims title was invalid, because there was no delinquency, and he took nothing by his alleged purchase. This fact being established, the prayer of his petition should have been denied and relief granted to Pauline H. Buffington, the owner of the parcel. The decree is, therefore, reversed and the cause remanded to be proceeded in according to the principles herein announced.

*Reversed and Remanded.*