# CHARLESTON.

## STATE *v.* GARNETT.

[WILLIAMS JUDGE, Absent.]

Submitted April 2, 1909.   Decided November 2, 1909.

1. TAXATION—*Forfeiture to State—Sale—Subsequent Forfeiture.*
   When title to land vested in the State by forfeiture for taxes has been transferred to a person by section 3, Article 13, of the Constitution, the state connot sell the land as forfeited

for any forfeiture then existing. All title then in the state by reason of purchase or non-entry for taxes passes by such transfer to such person.   (p. 110).

2.   SAME—*Forfeiture to State—Right to Redeem.*
    After title to land vested in the state by forfeiture for taxes has been once transferred to a person by force of section 3, Article 13, of the Constitution, the former owner of the forfeited title cannot redeem the land.   (p. 111).

3.   SAME—*Forfeiture to State—Sale—Subsequent Forfeiture.*
    When sale has been made of land as forfeited for taxes in a proceeding for its sale as such, it cannot be again sold for any forfeiture existing at the date of such sale under the same or other title.   (p. 111).

4.   SAME—*Forfeiture to State—Sale—Estoppel.*
    When the state owning land under a sale for taxes afterwards sells it to an individual for non-payment of taxes, subsequently assessed, the state will be estopped from selling the land under its title acquired by such former tax purchase. The title of the state so acquired passes to such individual tax purchaser.   (p. 111).

5.   SAME—*Tax Deed—Cure of Errors.*
    Deeds for land sold as forfeited under chapter 105 of the Code, made before the passage of chapter 42, Acts of 1909, are cured of any irregularity, error or informality by that act.   (p. 113).

6.   SAME—*Payment of Taxes by Trustee.*
    Payment of the taxes by one holding legal title to a tract of land, part of which is held by him in trust for another, saves that part from forfeiture for non-entry in the name of the equitable owner of such part.   (p. 113).

7.   SAME—*Payment of Taxes by Stranger.*
    Payment of taxes by Stranger.   (p. 114).

Appeal from Circuit Court, Nicholas County.

Action by the State against Masco Garnett, Sr., the Cherry River Boom & Lumber Company, A. H. Minor, and others. From the decree, both the lumber company and the state and others appeal.            *Affirmed in part.   Reversed in part.*

*Brown, Jackson & Knight,* for Crozier and others, trustees, and Malcom.

*Mollohan, McClintic & Mathews,* for Cherry River Boom & Lumber Co. and Cook; *Jake Fisher* and *Linn & Byrne,* for Minor heirs.

BRANNON, JUDGE:

Masco Garnett owned a tract of 1,000 acres of land on Cherry river, Nicholas county. In October, 1867, it was sold for taxes for the years 1865 and 1866, and purchased by the State. For the year 1867 it was charged with taxes in Garnett's name. This assessment related to the 1st day of April, 1867, before the tax sale to the State, and it was sold for the tax of 1867 in the year 1869, and purchased by T. G. Putnam, who took a tax deed under this sale, 26th December, 1870. Garnett conveyed the tract, 5th July, 1868, to Gilbert S. Minor. The tract was never afterwards assessed in Garnett's or Minor's name, except for the years 1869 and 1870 in Minor's name, but the taxes for those years were not paid. Putnam conveyed the undivided two-thirds of the tract to James S. Craig January 1, 1871, the deed describing the tract as 1,023 acres. For 1871 and 1872 the tract was charged as 1,000 acres to Putnam, and for 1873 to 1879, inclusive, the charge was to Putnam 341 acres and to Craig 682 acres, making the tract contain 1,023 acres as stated in the tax deed to Putnam. The taxes were unpaid for 1873-4-5-6 and 9 in Craig's name, and for 1875-6 and 9 in Putnam's name. In October, 1875, the Craig 682 acres was sold to the State for delinquency for 1873 and 1874; and in October, 1877, the Craig 682 acres and Putnam 341 acres were sold to the State for taxes of 1875 and 1876, and in December, 1881, both parcels were sold to the State for taxes of 1879. Thus the State became again invested with the land under the Putnam tax title. The tract then ceased to appear on the tax books. No redemption from these sales was ever made. In August, 1881, the commissioner of school lands made report of the land as forfeited and subject to sale for the school fund and a decree passed for such sale, and the sale was made 21st December, 1881, to John G. Malcom, and was confirmed 20th November, 1888, and the commissioner conveyed the land to Malcom July 22, 1890. This sale was for forfeiture in the name of Putnam and Craig for taxes under the State's purchases. On 2nd September, 1890, Malcom conveyed the tract of 1137 acres, as found by resurvey to Crozer, Fay and Miller, trustees of Gauley Land Association. The trustees conveyed the timber to Cherry River Boom and Lumber Company. The land was never on the

tax books in Malcom's name; but when he conveyed to the trustees, the tract was charged for 1891 and continuously to 1902, inclusive, in their names and taxes paid. Malcom on the date of his purchase put a tenant on the land under a written lease for the whole, and the tenant resided on the land, made improvements, built a mill, and so held possession until he sold to the Lumber Company, and they leased to a tenant, and continued the possession for twelve years. Thus under Malcom and his alienees there was possession twenty-one years from 1881 to 1902, when this suit was brought. Taxes paid by the trustees twelve years before the suit and actual possession those years. In July, 1902, the State brought the suit in hand to sell this land as forfeited to the State. The bill was predicated on the purchase by the State in 1867, but also alleged forfeiture for omission for subsequent years, without specifying in whose names or for what years. Garnett was made defendant, as also the Cherry River Lumber Company, Malcom and Fay, Crozer and Catlett (successor to Miller) as trustees of the Gauley Coal Land Association. Minor was also a defendant. Minor's heirs answered, admitting forfeiture and asking to be allowed to redeem. Malcom, the trustees, Cook and the Lumber Company answered denying the right of Minors to redeem, and claiming that the title had been transferred to Malcom and the trustees, his alienees, and claiming that the right of the state was barred by the statute of limitations, and that the state had no right to a sale of the land as forfeited.

A decree was pronounced, 21st October, 1905, holding that the deed from Malcom to Fay and others, trustees, was color of title to so much as it conveyed, and that the trustees had actual continuous possession under said deed more than ten years before the suit, and paid taxes for more than five years during such possession, and by reason thereof such portion so conveyed to the trustees was not forfeited. From this decree the State and the heirs of Minor appeal.

As stated above, that decree exonerated from forfeiture so much of the tract as Malcom's deed to the trustees conveyed, importing that it did not convey the whole tract. While E. C. Cook, Malcom's tenant, was in possession Malcom made a verbal agreement to sell Cook 100 acres out of the 1,000. Cook not being able to pay for 100 acres, Malcom conveyed him 58 acres,

June 19, 1896. Malcom retains possession of 42 acres, making up the 100 acres. A tract of 100 acres is spoken of in the evidence and pleadings as if not conveyed by Malcom to the trustees. It seems it was not intended to be conveyed; but the deed from Malcom includes it, as it conveys the whole tract of 1,000 acres, but conveyed by Malcolm as 1,137 acres. The trustees paid taxes on the whole. Malcom and Cook were in possession of the 100 acres for twenty-one years before suit. The court treated this 100 acres as distinct from the balance of the tract, and while by the decree of 21st October, 1905, it declared the right of the trustees good to the balance of the tract, and absolved it from sale as forfeited, by an order at the same term it reserved the case as to the 100 acres, and by a later decree, 25th April, 1907, declared this 100 acres as forfeited, and gave the Minor heirs right to redeem the 100 acres, and in default of their doing so directed its sale. From this decree the Cherry River Boom & Lumber Company, Cook and Malcom appeal.

### Decree of 21st October, 1905.

This exonerated from sale as forfeited the land involved, except the 100 acres. Is the state thus aggrieved? Had it right to sell the land? We answer that plainly it had not, for the reason, if for no other, that as stated in the circuit court's decree, the trustees had held possession before suit more than ten years and paid taxes during those years for more than five years, the real period as to both taxes and possession being twelve years. The Constitution, Article 13, section 3, gave every title, no matter how derived, vested in the state to those trustees. They claimed and held possession under their deed from Malcom, as color of title, and so paid taxes, and thus get all state title under the first clause of that section, and also under the last clause. It matters not whether we regard the title vested in the state by purchase for taxes in Garnett's name in 1867, or by purchase for taxes in the names of Putnam and Craig, the titles thus acquired passed to the trustees by force of the Constitution, as it in words says that *"all* title to lands in this State * * hereafter purchased by it and become irredeemable * * shall be and is hereby transferred to and vested in" those persons in possession and paying taxes defined in the section.

Malcom did not put his land on the tax books while he owned, and though the legal title was in the state from his purchase in 1881 until his deed in 1890, he was yet equitable owner and bound to have the land charged on pain of forfeiture, (which question we need not decide). Still, if his title was thus forfeited, it too would go to the trustees under the Constitution. Thus, the State had no right to a sale. She gave away her title to those occupants and tax-payers whom she regarded worthy, and to settle titles and settle the country, and had no title to sell. *State* v. *Collins,* 48 W. Va. 64; *State* v. *Harman,* 57 *Id.* 447, point 18; *State* v. *King,* (63 S. E. 468, point 17) 64 W. Va. 546. As the State had not right to sell, so the Minors had no right to redeem, since it is only where there is a right in the state to sell that the former owner has right to redeem. *State* v. *King,* just cited, point 18. Title has gone from the State, and there can be no redemption by her grace.

Again, the State had no right to sell any of the tract under her tax purchases in the names of Garnett and Putnam and Craig. These purchases were before the sale by the commissioner of school land in 1881 to Malcolm. That sale passed her right to that time, and she could not sell a second time for that cause. *State* v. *King,* (63 S. E. 468, pt. 17) 64 W. Va. 546; *State* v. *Jackson,* 56 *Id.* 558, point 8. She could sell for forfeiture after accruing in Malcolm's name if he illegally omitted charge, were it not that the possession and payment of taxes by the trustees under Malcolm's conveyance transferred the title forfeited from Malcom to the trustees. So, where are we to find title in the State warranting sale? She having none, Minor's heirs cannot, for that reason redeem. But that is not the only reason why Minor's heirs cannot redeem. The State's tax purchase in 1867 in Garnett's name ended that title. The sale as school land in 1881 to Malcom passes to him that forfeited title. Garnett or Minor had no right of redemption because the statute gave Garnett only right to pay taxes before sale and have release, or to the surplus of purchase money. This sale devested the Garnett right. After sale he had no right of redemption. The land was forfeited also as to Minor. How can Minor, in this suit in 1902 ask redemption when he had no title?

Again, the State in 1869 sold to Putnam by a second tax-sale. What was its effect? By *State* v. *West Branch,* (63 S. E. 372)

64 W. Va. 673, the State was estopped from claiming title under her second purchase, that in 1867, and it passed her title acquired by that sale to Putnam.    Therefore, Putnam and Craig, not Garnett or Minor, would have right to redeem.    "The owner of a valid title originating by reason of the first sale has in regard to a subsequent forfeiture to or vesting in the State right of redemption superior to that of the former owner."    *State* v. *King,* 64 W. Va. 546.    Craig and Putnam would thus have right to redeem from sale for taxes delinquent in their names if they had asked it in the first proceeding by commissioner of school lands in 1881, and Malcom, the trustees, Cook and Lumber Company in present proceeding.  ·  A redeemer must show title.    *State* v. *Jackson,* 56 W. Va. 558, pt. 7 Garnett's and Minor's right did not exist.    Who had right of redemption from forfeiture in Malcom's name for taxes after his purchase?    Not Minor.    His title had gone.    Malcom had this right to redeem.    Did Minor's right live on down to this suit begun in 1902 notwithstanding the second tax-sale to Putnam, notwithstanding the sale to Malcom in 1881 under the decree for sale of the land as forfeited?    No.    It had perished.    For want of title (*State* v. *Jackson, supra,* pt. 7) as also by reason of the transfer of title to the trustees by the Constitution the decree denying right to Minors to redeem the tract, except the 100 acres, is right, and the decree allowing Minors to redeem the 100 acres is wrong, as it took away from Malcom and Cook and the Lumber Company right to redeem, and conceded it to Minors, who had no title. And there was no right to sell the 100 acres, as will be shown.

### DECREE OF 25th APRIL, 1907.

What has been said above applies largely to this decree, which declares the 100 acres forfeited, and allows Minors to redeem and on failure to redeem directed its sale over the right of Malcom, Cook and the Lumber Company.

I have shown above that Minors had no right to redeem.    But had the State right to sell the 100 acres?    It could not sell under its title coming from its purchase in Garnett's name in 1867, first, because its second tax sale, that to Putnam, estopped it.    *State* v. *West Branch,* (63 S. E. 372) 64 W. Va. 673.    Sec-

ond, it could not sell under its right derived from its purchase for delinquency in the names of Putnam and Craig, because the proceeding by the commissioner of school lands sold the land, the whole. tract, to Malcom, and it is well settled by statute and decisions that when the State has thus once sold lands it cannot sell again for the same cause or other cause, except later forfeiture. When the sale to Malcom was had it passed all state right derived from its antecedent purchases in the names of Garnett, Putnam and Craig. It could not sell over again. *State* v. *Jackson,* 56 W. Va. 558, pt. 8; *State* v. *King,* (63 S. E. 468) 64 W. Va. 546, pt. 17. It is said Craig's deed to Malcom was made after he resigned as school commissioner. The act of 1905 makes good deeds "purporting to convey" school lands under sale. Besides, Craig derived power as a *person* to convey by the decree directing conveyance. He conveyed as an individual by authority of decree, for the court, not merely because he was commissioner. Craig did not act in making the deed, *ex officio,* but only by virtue of the decree. The fact that the decree directs "said commissioner" to execute only identifies the person. Besides, this deed, if void, is color of title. And is more than that, because of chapter 42, Acts of 1905, section 19, providing that any instrument or conveyance "purporting to convey heretofore made by said state through or by the commissioner of school lands, under any decree or order of a circuit court in any suit or proceeding under said chapter 105 of the Code" passes all state title, "notwithstanding any irregularity or error or informality in such sale or conveyance or purported conveyance." This cures the deed, if irregular.

Third. No sale of the 100 acres could be made because it was not reserved from the bounds conveyed by Malcom to the trustees, though perhaps intended to be, but inadvertently overlooked, and the trustees paid taxes on the whole 1,137 acres, including this 100 acres. This payment was on the whole land. As taxes are on the *land,* not the title, the State cannot say anything is due her. She has gotten all taxes to which she is entitled. Payment was under this same title. See late case of *State* v. *Allen* (64 S. E. 140) 65 W. Va. 335. If the 100 acre tract is in the deed from Malcom to the trustees, it is clear that the payment prevents forfeiture whether the trustees hold in trust for Malcom and Cook or not. *Siers* v. *Wiseman,* 58 W.

Va. 340; *State* v. *West Branch,* (63 S. E. 372) 64 W. Va. 673; *Boggess* v. *Scott,* 48 *Id.* 316.    Payment by a stranger, if not disavowed by the owner, would prevent forfeiture.    *Cecil* v. *Clark,* 44 W. Va. at pages 680-81; *Martin* v. *Snowden,* 18 Grat. 100; *Bennett* v. *Hunter,* 9 Wall., 76 U. S. 326; Black on Tax Titles, section 161.

But suppose the 100 acres not in the deed from Malcom to the trustees.    Take Cook's 58 acres, conveyed by Malcom to him 19th June, 1896.    Cook in possession longer than ten years the while paid taxes from 1898 to 1902, both inclusive, got the State title by the first and third clauses section 3, Art. 13 of the Constitution.    This is another conclusive bar against the power of the State to sell.    *State* v. *Harman,* 57 W. Va. 447, pt. 18.

But these are only further law principles defending Cook and Malcom, because payment of taxes by the trustees on the 100 acres as included in their bounds prevented the forfeiture of the 100 acres.    We affirm the decree pronounced on the 21st day of October, 1905, in its holding the land conveyed by John G. Malcom and wife to Robert H. Crozer, H. H. Fay and M. E. Miller, trustees, by deed dated 2nd day of September, 1890, not forfeited and not liable to sale as forfeited; and we reverse the decree pronounced on the 25th day of April, 1907, holding the 100 acres of land as forfeited and liable to sale and giving right to the heirs of Gilbert S. Minor to redeem, and we adjudge, order and decree that said 100 acres is not forfeited or liable to sale and said heirs have no right to redeem; and that the suit of the State be dismissed.

*Affirmed in part.    Reversed in part.*