# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**March 3, 2026**

released at 3:00 p.m.

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**WINGED FOOT MINERALS, LLC, CORITA PRENDERGAST, MARY LOU BUCKMAN, GRACE HOYT, CONNIE SUE GANDEE, EUGENE PRENDERGAST, FRANK PRENDERGAST, MELISSA ULIK, LORI GULLING, ELIZABETH PRENDERGAST, JULYA PRENDERGAST, DAWN MIRUKA, AND PAUL PRENDERGAST,**
**Plaintiffs Below, Petitioners**

**v.) No. 25-ICA-100**     (Cir. Ct. Marshall Cnty. Case No. CC-25-2022-C-83)

**SWN PRODUCTION COMPANY, LLC, EQUINOR USA ONSHORE PROPERTIES, INC., MARY ELIZABETH ALEXANDER, MARY A. BARKLEY, KEVIN BLATT, INDIVIDUALLY AND AS TRUSTEE OF THE BLATT FAMILY IRREVOCABLE TRUST DATED APRIL 1, 2011, THOMAS BLATT, PAUL E. BLATT, LAWRENCE E. BLATT, JR., JOSEPH J. BLATT, WILLIAM J. BLATT, JR., RICHARD P. BLATT, MICHAEL J. BLATT, STEVEN BLATT, TERESA CHURCH, LAURA M. DOLAN, PATRICK A. FROHNAPFEL, LISA FROHNAPFEL, DAVID P. FROHNAPFEL, LYNN FROHNAPFEL, CHRISTINA M. FROHNAPFEL, MARY ANN GODDARD, JOSEPH A. HOHMAN & MARY L. HOHMAN, TRUSTEES OF THE HOHMAN REVOCABLE LIVING TRUST DATED AUGUST 8, 2014, BERTHA KLUG, NANCY KOONTZ, LISA M. LANTZ, EDNA MCCOMBS, CONSTANCE S. MILLER, MARK H.J. MILLER, MATTHEW LOUIS NICHOLAS MILLER, MARGARET JULIA AGNES MILLER, KEVIN MYSLIWIEC, MARY JOSEPHINE NICE, BARBARA PANCAKE, LINDA RUCKMAN, MARY STINE, ROBERT FRANCIS VILLERS, KENNETH A. WIEGAND, LEONARD L. WIEGAND, JEAN ANN WIEGAND AS EXECUTOR OF THE ESTATE OF ROBERT L. WIEGAND, CHARLES A. WIEGAND, DAVID PAUL WIEGAND, JOHN G. WIEGAND, MARGARET WILSON, DAVID L. WILSON, MARY CATHERINE MILLER WRIGHT, ROBERT F. YEAGER, MICHAEL YOUNG, MINERAL ACQUISITION COMPANY I, L.P., MAC I(YC) L.P., LYNN E. COOK, MARY K. MCKEETS, FRANCES J. PUCHARICH, AMY C. MURRAY, SUZANNE THOMPSON, SUE E. JOHNSON, AND MARSHALL COUNTY SHERIFF, AS CONSERVATOR FOR BRENDA GARCIA,**
**Defendants Below, Respondents**

**MEMORANDUM DECISION**

In this appeal, Petitioners Winged Foot Minerals, LLC, Corita Prendergast, Mary Lou Buckman, Grace Hoyt, Connie Sue Gandee, Eugene Prendergast, Frank Prendergast, Melissa Ulik, Lori Gulling, Elizabeth Prendergast, Julya Prendergast, Dawn Miruka, and Paul Prendergast, argue that they own 75%, or a 3/4 interest, of the oil and gas underlying a tract of approximately 227 acres (the "Subject Tract") in Marshall County, West Virginia. Petitioners, the successors in interest of James Prendergast, claim that Mr. Prendergast purchased this interest at a 1991 tax sale and obtained title through the resulting 1993 tax deed. In the February 24, 2025, order now on appeal, the Circuit Court of Marshall County found that the 1993 tax deed through which Petitioners claim ownership was void, and that a group of Respondents own the contested interest. The "SWN Respondents" filed a response. The "Individual Respondents" also filed a response.[1] Petitioners filed a reply.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] The "SWN Respondents" include SWN Production Company, LLC ("SWN"), and Equinor USA Onshore Properties, Inc. ("Equinor"), who are represented by Timothy M. Miller, Esq., Robert M. Stonestreet, Esq., and Tiffany M. Arbaugh, Esq.; Mineral Acquisition Company I, L.P. and MAC I (YC) L.P., who are represented by Andrew G. Jenkins, Esq.; and Lynn E. Cook, Mary K. McKeets, Frances J. Pucharich, Amy C. Murray, and Suzanne Thompson, who are represented by Jeffery D. Kaiser, Esq., and Andrew R. Thalman, Esq.

The Individual Respondents include all named Respondents in this appeal aside from the SWN Respondents, Sue E. Johnson, and Marshall County Sheriff as Conservator for Brenda Garcia. These latter two Respondents did not participate in this appeal. The Individual Respondents are represented by Christian E. Turak, Esq., Daniel J. Guida, Esq., and S. David Wilharm, Esq.

Other than SWN and Equinor, who claim to hold leases for the disputed oil and gas, the Respondents are the individuals who claim—and were determined by the circuit court to hold—ownership over the disputed oil and gas interest that Petitioners claim.

[2] Petitioner Winged Foot Minerals, LLC, is represented by John R. Whipkey, Esq. The Individual Petitioners are represented by Edmund L. Wagoner, Esq., and Matthew B. Hansberry, Esq.

At the time of his death in 1920, Joseph Nolte, Sr., owned a 363.88-acre tract in Marshall County (the "Parent Tract"), and all underlying oil and gas. Through bequests in his last will and testament, Mr. Nolte split the surface into three smaller tracts: a 134.6-acre tract to his son Joseph Nolte, Jr., a 136.4-acre tract to his daughter Theresa Wiegand, and a 92.8-acre tract to his granddaughters Mary Nolte and Christina Nolte. Joseph Nolte, Sr.'s last will and testament also divided the oil and gas underlying the Parent Tract: 1/4 to Joseph Nolte, Jr., 1/4 to Theresa Wiegand, 1/8 to Mary Nolte, 1/8 to Christina Nolte, and 1/4 to his grandson, Joseph Wiegand, Jr.

Through a 1921 deed, Mary Nolte and Christina Nolte transferred their 92.8-acre surface tract to Joseph Nolte, Jr., reserving their oil and gas interest. By combining this 92.8-acre tract with his 134.6-acre tract, Joseph Nolte, Jr. owned the surface of the 227.48-acre Subject Tract at issue in this case. By virtue of his 1/4 interest in the oil and gas underlying the larger Parent Tract, Joseph Nolte, Jr. owned 1/4 of the oil and gas underlying the Subject Tract. Similarly, because of their interests in the oil and gas underlying the Parent Tract, Theresa Wiegand, Mary Nolte, Christina Nolte, and Joseph Wiegand, Jr. owned the other 3/4 of the oil and gas underlying the Subject Tract.

For tax purposes, the 1920 Marshall County land book[3] assessed the Subject Tract to Joseph Nolte, Jr. as "Fee" ownership of 227.48 acres described as "Lynn Camp." In 1920, Theresa Wiegand, Mary Nolte, Christina Nolte, and Joseph Wiegand, Jr., were not assessed separately for their interests in the oil and gas underlying the entire Parent Tract or specifically underlying the Subject Tract.

In the 1933 land book, written beneath the assessment on the Subject Tract, the assessor added an assessment for "Royalty Oil" to "Nolte Joseph." This assessment reappeared in each land book until 1937, until it was crossed out with the handwritten note that "Mr. Nolte tells Paul he has no royalty."

---

[3] The assessor of each county in West Virginia is required to make and maintain yearly land books documenting the tax assessments on each parcel of real property in that county. *See* W. Va. Code §§ 11-4-1 to 11-4-21. In their discussion of the various yearly Marshall County land books relevant to this appeal, the parties sometimes refer to land books by assessment year, and other times refer to them by taxable year. For clarity and consistency, in this decision the Court will refer to the land books by assessment year. Beginning in 1961, property was assessed as of July 1 each year. *See* W. Va. Code § 11-3-1 (1961); Londo H. Brown, *Changes in West Virginia Real Property Tax Law*, 66 W. Va. L. Rev. 271 (1964). For example, "1920 land book" refers to the land book for the assessment year beginning on January 1, 1920, and "1972 land book" refers to the land book for the assessment year beginning on July 1, 1972.

The assessment of the Subject Tract remained in the land books through 1945. That year's land book assessed Joseph Nolte, Jr. on the "Lynn Camp" property for 227.48 acres.[4] The property was assessed at a per acre value of $13 and a total land value of $3000. In 1945, Theresa Wiegand, Mary Nolte, Christina Nolte, and Joseph Wiegand, Jr. were not separately assessed on their oil and gas interests underlying the Subject Tract. In 1946, Joseph Nolte, Jr. was again assessed on the "Lynn Camp" property for 227.48 acres at a per acre value of $13 and a total land value of $3000. For the first time, the 1946 land book assessed the "Nolte Joseph Heirs" on an interest described only as "Roy." The "Roy" assessment did not include any acreage or a per acre value, and was assessed at a total value of $50.

Joseph Nolte, Jr. died testate in 1971. Pursuant to Mr. Nolte, Jr.'s last will and testament, the executor of his estate sold the Subject Tract to R. Robinson Chance, Jr., via a deed issued on October 10, 1972. In the 1972 land book, the Subject Tract was assessed to "Nolte Joseph Est." However, this assessment was crossed out, and a handwritten note in the margin provides "To R. Robinson Chance Jr. DB432 p361." The "Roy" property assessed to the "Nolte Joseph Heirs" was also crossed out, with a handwritten note in the margin explaining "Sold to State Nov 1973 for 1972 taxes." In the 1973 land book, the Subject Tract was assessed to R. Robinson Chance, Jr. as "222.4 A Lynn Camp."[5] The 1973 land book listed the "Roy" assessment under a "Sold to State" section; however, the assessment was crossed out, with a handwritten note explaining that the property was "Redeemed from Auditor May 1974 for 1972 taxes Back taxed for 1974." The 1974 land book included a handwritten listing of the "Roy" assessment, assessed to R. Robinson Chance, Jr. Beginning in the 1975 land book, the "Roy" assessment was printed and assessed to R. Robinson Chance, Jr.

In a December 14, 1982, deed, R. Robinson Chance, Jr. conveyed the Subject Tract to Daniel B. Watkins and John L. Turcato, without reservation of any mineral rights. The Subject Tract was assessed in subsequent land books to "Watkins Daniel B Et Al." No party asserts that this assessment has ever become delinquent. After this transfer, subsequent land books continued to assess "Roy" to R. Robinson Chance, Jr. The "Roy"

---

[4] Between 1920 and 1945, the format of the land books changed. In both the 1945 and 1946 assessments for the Subject Tract, "227" is listed under a column designated for listing the acreage of fee ownership of property, and "48" is listed under the column directly to the right designated for listing the acreage of surface ownership of property. However, the parties indicate that this was intended to reference 227.48 acres, not 227 acres of fee ownership and 48 acres of surface ownership.

[5] The SWN Respondents represent that this change in the acreage of the Subject Tract resulted from a survey of the property completed in 1972. No party disputes that the property later described as "222.4 A Lynn Camp" is the same tract previously described as a 227.48-acre property.

assessment became delinquent in 1990 and was sold to James Prendergast at a 1991 tax sale. On April 5, 1993, the Clerk of the County Commission of Marshall County issued a tax deed to James Prendergast conveying the interest covered by this delinquent assessment. The deed described the interest as a royalty, included a description of the Subject Tract, and characterized the interest as "the same oil and gas reserved unto R. Robinson Chance, Jr., by deed dated December 14, 1982."

On August 26, 2022, Petitioners, the successors in interest to James Prendergast, initiated the underlying action by filing a complaint in the Circuit Court of Marshall County. Petitioners alleged that the "Roy" assessment added to the Marshall County land book in 1946 was a tax assessment for the 3/4 interest in the oil and gas underlying the Subject Tract, previously owned by Theresa Wiegand, Mary Nolte, Christina Nolte, and Joseph Wiegand, Jr. Petitioners claimed that, by purchasing the delinquent "Roy" assessment and obtaining the 1993 tax deed, Mr. Prendergast became the owner of that 3/4 interest in the oil and gas underlying the Subject Tract.[6] Accordingly, Petitioners asked for a declaratory judgment against the Individual Respondents—the successors in interest to Theresa Wiegand, Mary Nolte, Christina Nolte, and Joseph Wiegand, Jr.—that Petitioners were the owners of that 3/4 oil and gas interest. Petitioners also raised claims for conversion and trespass against SWN and Equinor, alleging that those companies had been removing oil and gas underlying the Subject Tract without leases with Petitioners, the owners. Petitioners also sought an accounting of all proceeds paid to the Individual Respondents for the oil and gas. Some of the Respondents filed a counterclaim seeking a declaratory judgment that the Respondents (other than SWN and Equinor) were the owners of the 3/4 interest at issue.[7]

On June 10, 2024, Petitioners filed a motion for summary judgment on their declaratory judgment claim. On September 30, 2024, the Individual Respondents and the SWN Respondents filed separate motions for summary judgment on Petitioners' claims. Among other contentions, the Individual Respondents argued that the "Roy" assessment

---

[6] Petitioners did not claim any right to the 1/4 interest in the oil and gas underlying the Subject Tract initially devised to Joseph Nolte, Jr. Petitioners conceded in their complaint that the 1/4 interest in the oil and gas owned by Joseph Nolte, Jr. remained unsevered from the surface of the Subject Tract and was taxed as part of the assessment of the Subject Tract. Petitioners acknowledged that this 1/4 interest in the oil and gas was transferred with the surface interest to R. Robinson Chance in the 1972 Deed and to Daniel B. Watkins and John L. Turcato in the 1982 Deed.

[7] It is not entirely clear from the appendix or the briefing which Respondents joined in this counterclaim. However, there appears to be no dispute that the counterclaim sought a declaration that the Respondents other than SWN and Equinor, as the successors in interest of Theresa Wiegand, Mary Nolte, Christina Nolte, and Joseph Wiegand, Jr., were the owners of the contested 3/4 interest in the oil and gas underlying the Subject Tract.

was a duplicative assessment. The parties briefed the respective motions, with Petitioners filing a joint response to the two motions for summary judgment. On February 24, 2025, the circuit court entered an order denying Petitioners' motion for summary judgment, granting the Individual Respondents' motion for summary judgment, granting the Respondents' counterclaim for declaratory relief, and dismissing Petitioners' complaint.

In this order, the circuit court determined that the "Roy" assessment and the 1993 tax deed were void for two reasons. First, the court found that, to the extent it was intended as an assessment of the contested 3/4 oil and gas interest, the "Roy" assessment was duplicative. The circuit court noted that the Subject Tract had been taxed as a fee interest, including the contested 3/4 oil and gas interest, and that when the "Roy" assessment was created in 1946, the tax assessment on the Subject Tract was not reduced in valuation to account for the removal and separate taxation of that interest. Accordingly, despite the creation of the "Roy" assessment in 1946, the Subject Tract continued to be taxed as a fee, including the contested interest. Because the owner of the surface of the Subject Tract continued to be taxed on all the underlying oil and gas and that assessment never became delinquent, taxes were always paid on the contested 3/4 oil and gas interest, and thus the duplicative "Roy" assessment of that interest and the 1993 tax deed were void. Second, the circuit court concluded that the assessment was void when sold because it was assessed to R. Robinson Chance, Jr., who had never owned the contested 3/4 interest and at the time of the sale did not own any interest in the Subject Tract. It is from this order that Petitioners now appeal.[8]

"A circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. Pt. 1, *City of Martinsburg v. Berkeley Cnty. Counc.*, 241 W. Va. 385, 825 S.E.2d 332 (2019) (quoting Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995)). Our appellate review of a circuit court's order granting summary judgment is *de novo*. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

Petitioners raise a single, broadly framed assignment of error: that the circuit court erred in granting summary judgment to Respondents and denying summary judgment to Petitioners. Petitioners state that both allegedly erroneous rulings stem from the circuit court's conclusion that the "Roy" tax assessment at issue was void as a duplicative assessment. However, in arguing this assignment of error, Petitioners challenge each of the circuit court's two grounds for granting judgment to Respondents: that the "Roy"

---

[8] In their Notice of Appeal, Petitioners indicated that the February 24, 2025, order on appeal was not the final order as to all claims and parties in the case below. However, it is not entirely clear from the appendix and the briefing what issues remain pending before the circuit court. However, because the February 24, 2025, order dismissed Petitioners' complaint, resolved Respondents' declaratory judgment claim, and was certified as final under Rule 54(b) of the West Virginia Rules of Civil Procedure, we find that it is final for purposes of this Court's appellate jurisdiction.

assessment was void as duplicative and that it was invalid when sold because it was assessed to R. Robinson Chance, Jr., who held no interest in the Subject Tract. Because we find no error in the circuit court's conclusion that the "Roy" assessment was a duplicative, void assessment, the first issue is dispositive of this appeal, and it is unnecessary to address the second.

The Supreme Court of Appeals of West Virginia ("SCAWV") has long recognized "that property may be assessed but once for taxes and that one full satisfaction of such taxes is all the State may require." *Orville Young, LLC v. Bonacci*, 246 W. Va. 26, 33, 866 S.E.2d 91, 98 (2021). Therefore, "[i]n case of two assessments of the same land, under the same claim of title, for any year, one payment of taxes, under either assessment, is all the State can require." *Id.* at 28, 866 S.E.2d at 93, Syl. Pt. 2 (quoting Syl. Pt. 2, *State v. Allen*, 65 W. Va. 335, 64 S.E. 140 (1909)). A tax assessment is void where taxes on the same property are paid under another assessment, and "[a] deed made pursuant to a tax sale under a void assessment is void." *Id.* at 35-36, 866 S.E.2d at 100-01 (quoting Syl. Pt. 4, *Blair v. Freeburn Coal Corp.*, 163 W. Va. 23, 253 S.E.2d 547 (1979)).

The SCAWV has specifically recognized that a tax assessment is duplicative where an interest is severed from a larger tract and assessed separately, but the assessment on the larger tract is not adjusted to acknowledge the diminution. In *Allen*, the owner of a 9-and-5/8-acre tract conveyed a smaller parcel from that tract, but "[o]n the land book no deduction for the portion of the 9⅝ acres conveyed . . . was made from the assessment of the [larger] tract." *State v. Allen*, 65 W. Va. 335, 336, 64 S.E. 140, 140 (1909). Although the assessment on the smaller parcel became delinquent and was sold, the SCAWV concluded that the sale of the smaller tract was void because taxes never became delinquent on the larger tract. *Id.* at 338-40, 64 S.E. at 141.

Similarly, in *Snodgrass v. Jolliff*, 59 W. Va. 292, 53 S.E. 151 (1906), the owner of a tract conveyed it, reserving only a 1/16 oil and gas interest. However, the assessor entered the tract in the new owner's name at the same valuation used in the immediately preceding year, without reduction for removal of the 1/16 interest. *Snodgrass*, 59 W. Va. at 293-94, 53 S.E. at 151. The grantor then conveyed a 1/32 interest in the oil and gas—half of his remaining 1/16 interest—and retained the other 1/32 interest. *Id.* However, the grantor and the grantees were each assessed for a 1/16 interest. *Id.* While the assessments for the larger tract and the grantor's 1/16 interest remained paid, the 1/16 interest assessed to the grantees became delinquent and was sold. *Id.* The SCAWV found this sale and the resulting deed void, reasoning that taxes on the grantees' 1/32 interest had already been paid twice: once by the owner of the larger tract, because the assessed value of that tract was not reduced to account for the removal of a 1/16 oil and gas interest, and once by the grantor, because the assessment of a 1/16 interest to the grantor included the 1/32 interest the grantor retained and the 1/32 interest conveyed to the grantees. *Id.* at 292, 53 S.E. at 151, Syl. Pt. 1.

7

We find no error in the circuit court's conclusion that, as in *Snodgrass* and *Allen*, to the extent the "Roy" assessment was intended to assess the contested 3/4 interest in oil and gas underlying the Subject Tract, it was duplicative due to the assessor's failure to reduce the valuation of the assessment of the surface of the Subject Tract. As an initial matter, the undisputed facts demonstrate that the "fee" tax assessment added to the land books in 1920 for the 227.48-acre Lynn Camp property in the name of Joseph Nolte, Jr., was an assessment of the entirety of the surface of the Subject Tract and all the underlying oil and gas. It is undisputed that, prior to his death, the entirety of the Parent Tract, including the oil and gas, was assessed to Joseph Nolte, Sr. Moreover, the 1920 land book assessed the divided surface of the Parent Tract to its respective owners: a 136.4-acre tract to Theresa Wiegand and the 227.48-acre Subject Tract to Joseph Nolte, Jr. However, the assessor did not add any assessments for the contested 3/4 interest in the oil and gas in the names of Theresa Wiegand, Mary Nolte, Christina Nolte, and Joseph Wiegand, Jr. As we have recognized, the SCAWV's "caselaw clearly establishes that when a mineral estate has never been separately assessed, it is assumed to be assessed with the surface, even when the surface owner and mineral owner are different." *Ne. Nat. Energy, LLC v. LT Realty Unlimited, LLC*, 250 W. Va. 500, 507, 905 S.E.2d 179, 186 (Ct. App. 2024) (collecting cases). As Petitioners do not identify any evidence in the record contrary to this presumption, the undisputed facts show that assessment of the Subject Tract added to the 1920 land book assessed taxes on the entire property, including the contested 3/4 oil and gas interest.

Moreover, the undisputed facts establish that the 1945 assessment to Joseph Nolte, Jr. for the Subject Tract still included taxes on the contested 3/4 oil and gas interest. Petitioners do not point to any evidence in the record demonstrating that the contested 3/4 oil and gas interest was removed from this assessment prior to 1945. While Petitioners note that the valuation of Subject Tract fluctuated between 1920 and 1945, they do not point to any evidence that these fluctuations reflect a severance of the contested 3/4 oil and gas interest. Indeed, Petitioners assert that they "cannot state why the various Assessors changed the relevant values at various times," and that they could only "guess." Petitioners also discuss the "Royalty Oil" assessment added to the land books from 1933 to 1937. However, as this interest was assessed to Joseph Nolte, Jr.,[9] and not any of the owners of the contested 3/4 interest, we do not find it relevant to this appeal. Indeed, Petitioners explicitly state that they do not claim the 1/4 interest in the oil and gas originally devised to Joseph Nolte, Jr. and that at all times this interest continued to be taxed with the surface in the assessment of the Subject Tract.

Therefore, since the undisputed facts demonstrate that the 1945 assessment of the Subject Tract also included taxes on the contested 3/4 oil and gas interest, the critical

---

[9] As noted above, this assessment was explicitly assessed to "Nolte Joseph," just as the assessment for the Subject Tract during those same years. No party argues that this was anyone other than Joseph Nolte, Jr.

8

consideration under *Allen* and *Snodgrass* is whether the assessor amended the 1946 assessment of the Subject Tract to account for the addition of the "Roy" assessment. As discussed above, the assessor made no such change. The 1946 land book described the Subject Tract in the same way as the 1945 land book, and the valuation, both per acre and in total, was not reduced to account for the severance of any interest. Accordingly, we find that, pursuant to *Snodgrass*, the "Roy" assessment was duplicative. As in that case, there was a surface interest—the Subject Tract—that was assessed on the surface and all underlying oil and gas. Moreover, just as in that case, when an assessment was added to tax a severed oil and gas interest, the valuation of the surface interest was not reduced to account for that severance. Accordingly, the taxes on the contested 3/4 oil and gas interest were assessed under the assessment of the surface of the Subject Tract, and those taxes never became delinquent, making the "Roy" assessment duplicative and the sale of that interest void.

In their reply brief, Petitioners attempt to distinguish *Snodgrass*, arguing that in *Snodgrass*, in addition to the delinquent assessment of a 1/16 oil and gas interest and the unreduced assessment of the surface tract that remained paid, there was also an assessment of a 1/16 interest in the oil and gas interest that never became delinquent. Petitioners argue that "[i]t was therefore apparent, on its face, that the taxes on both were paid, regardless of the surface assessment." This misconstrues *Snodgrass*. In that case, the SCAWV held that the unreduced surface assessment and the paid assessment for a 1/16 oil and gas interest each independently rendered the delinquent 1/16 assessment duplicative, explaining "[a] sale of the interest of [the delinquent owners] in the oil and gas for taxes will not pass good title, because of the payment of taxes by their co-tenant, Price [who paid the 1/16 assessment] or Higgins [who paid the unreduced surface assessment]." *Snodgrass*, 59 W. Va. at 292, 53 S.E. at 151, Syl. Pt. 1. Therefore, while in *Snodgrass* there were two non-delinquent assessments covering the allegedly delinquent interest, and this case there is only one, the SCAWV held that *either* of the paid interests was sufficient to render the delinquent assessment duplicative and void. Accordingly, we find Petitioners' attempt to distinguish *Snodgrass* unconvincing.

Finally, Petitioners argue that following *Snodgrass* and finding the "Roy" assessment duplicative will upend many past assessments, pointing to other assessments not at issue in this case and asking the Court hypothetical questions about whether those assessments would be duplicative under this decision. Petitioners suggest, for instance, that *Snodgrass* is incompatible with the severance of "minimum assessments," because when an interest assessed at the minimum valuation is divided, each divided portion of that interest will necessarily also receive a minimum valuation, meaning that the assessor will have made no reduction in the valuation of the original assessment to acknowledge the diminution of the interest.

This Court is without authority to answer these hypothetical questions based on facts not before the Court. *See Cummings v. Paine*, 249 W. Va. 568, 574 n.7, 899 S.E.2d 646,

9

652 n.7 (Ct. App. 2024) ("This Court, like the SCAWV, is not authorized to resolve such hypothetical case scenarios[.]"). In their motion for summary judgment, the Individual Respondents cited to the relevant assessments from 1945 and 1946 and argued that the "Roy" assessment was duplicative under the holding of *Snodgrass*. In their response to this motion, Petitioners asserted generally that the "Roy" assessment was not duplicative, but they did not point to any evidence demonstrating another possible explanation for the assessor's failure to reduce the valuation of the Subject Tract. The SCAWV has held that, to resist a properly supported motion for summary judgment, the nonmoving party must "(1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56([d]) of the West Virginia Rules of Civil Procedure." Syl. Pt. 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). Petitioners failed to do this in response to the Individual Respondents' argument that the "Roy" assessment was duplicative. Therefore, we decline to speculate on how this case might have differed if Petitioners had produced such evidence at summary judgment, or how future cases where such evidence is presented should be resolved.

Accordingly, we find no error in the circuit court's conclusion that, to the extent the "Roy" assessment was an assessment of the contested 3/4 oil and gas interest, it was duplicative. Because the assessment on the Subject Tract never became delinquent, the State always received the one tax payment on the contested 3/4 oil and gas interest to which it was entitled, and the sale of that interest and 1993 tax deed were void. Therefore, we affirm the circuit court's judgment.

Although it was not a basis for the circuit court's decision, the SWN Respondents also argue that that the "Roy" assessment, by its description, was invalid as an assessment of the contested 3/4 oil and gas interest. We agree and also affirm for this reason.[10]

An assessment described as a royalty or a deed conveying a royalty reserved to a particular individual, cannot be construed as transferring a severed mineral estate owned by others. Prior decisions have supported this conclusion and reinforced the necessity of respecting the legal distinction between mineral estates, leasehold interests, and royalties. In *Orville Young, LLC*, after finding the assessment described as "202 Royalty Wells #629-630 Nat Gas Co. W. Va." void for other reasons, the SCAWV also explained that the "assessment, by its very description, related only to the royalties derived from the subject oil and gas leasehold interests, not to the actual oil and gas estate." *Orville Young, LLC*, 246 W. Va. at 35 n.12, 866 S.E.2d at 100 n.12; *see also Venable Royalty, LTD v. EQT Prod.*

---

[10] *See* Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965) (recognizing that an appellate court "may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment").

*Co.*, 250 W. Va. 764, 767-68, 908 S.E.2d 501, 504-05 (Ct. App. 2024) (recognizing and discussing the difference between an interest in royalties and an interest in an oil and gas estate). We find this reasoning applicable to the "Roy" assessment, as "Roy" is clearly shorthand for "royalty." Because the "Roy" assessment was an assessment on royalties, Mr. Prendergast did not obtain title to the contested 3/4 oil and gas interest through his purchase of that delinquent "Roy" assessment and the subsequent 1993 tax deed.

Additional circumstances in the record support our conclusion that the "Roy" assessment was an assessment on royalties—rather than the contested 3/4 interest in the oil and gas estate. Notably, when the assessor removed the earlier "Royalty Oil" assessment from the 1937 land book, the assessor explained in a handwritten note that "Mr. Nolte tells Paul he has no royalty." Further, the assessor transferred the "Roy" assessment to R. Robinson Chance, Jr. in the 1974 land book, and it is undisputed that Mr. Chance never owned any portion of the contested 3/4 oil and gas interest. Indeed, in explaining that transfer in the land book, the assessor wrote "See Joseph Nolte Heirs DB 432 p361 per Mr. Chance," referring to the 1972 Deed through which Mr. Chance obtained the surface of the Subject Tract and Joseph Nolte, Jr.'s 1/4 interest in the oil and gas. Additionally, the 1993 tax deed based on the delinquent "Roy" assessment described the interest conveyed as the "royalty purchased by James Prendergast."

As Petitioners' claim to the contested 3/4 oil and gas interest undisputedly depends on the conclusion that the "Roy" assessment was an assessment of that interest, and we find that it was not, we also affirm the circuit court on this basis.

Based on the foregoing, we affirm the February 24, 2025, order of the Circuit Court of Marshall County.

Affirmed.

**ISSUED:** March 3, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

11

**CONCURRING AND WRITING SEPARATELY:**

Judge S. Ryan White

WHITE, JUDGE, concurring:

I concur in the Court's judgment affirming the circuit court. Petitioners acquired no interest in the disputed three-fourths oil and gas estate. I write separately because this case should be resolved on narrower, statutory grounds, and I would decline to extend *Snodgrass v. Jolliff*, 59 W. Va. 292, 53 S.E. 151 (1906), beyond its facts.

The dispositive defect lies in the assessment and the deed itself. Chapter 11 of the West Virginia Code governs tax sales, and its requirements are jurisdictional. Real estate must be entered in the land books in the name of the owner. *See* W. Va. Code § 11-4-9. A tax sale conveys only the interest of the person whose property was properly assessed and became delinquent. If the interest purportedly sold was never assessed in the name of its true owner, the State lacks authority to sell it.

The record is undisputed that the three-fourths oil and gas interest at issue was devised in 1920 to Theresa Wiegand, Mary Nolte, Christina Nolte, and Joseph Wiegand, Jr., and passed to their successors. It was never conveyed to R. Robinson Chance, Jr. The 1972 deed to Mr. Chance transferred the surface and the one-fourth mineral interest owned by Joseph Nolte, Jr. It did not include the remaining three-fourths mineral estate. By 1982, Mr. Chance had conveyed away the surface and his undisputed mineral interest.

Nonetheless, the delinquent assessment sold in 1991 was assessed to Mr. Chance under the shorthand designation "Roy." At the time of sale, he owned no interest in the disputed three-fourths mineral estate; a fact undisputed by the parties. The State thus purported to sell, for Mr. Chance's delinquency, an interest he never owned, and which was never assessed in the names of its true owners. The tax sale was void. A tax deed cannot operate to transfer title from persons whose interests were neither assessed in their names nor delinquent.

The language of the tax deed establishes the limited scope of what was conveyed. The April 5, 1993, deed described the interest conveyed as "the same oil and gas reserved unto R. Robinson Chance, Jr., by deed dated December 14, 1982," and referred to the property as the "royalty purchased." The deed expressly tied the conveyed interest to what was "reserved unto" Mr. Chance in the 1982 conveyance.

There is no evidence that Mr. Chance reserved the disputed three-fourths mineral estate in 1982. He could not have reserved what he did not own. A tax deed conveys only the interest described therein and only such interest as the delinquent taxpayer possessed.

12

It cannot enlarge the taxpayer's estate or divest others of property not assessed in their names.

For these reasons, I would not extend *Snodgrass* to reach the result. *Snodgrass* addressed a specific circumstance involving overlapping assessments and triple payment of taxes under related claims of title. It did not authorize courts to invalidate tax deeds whenever a land book valuation was not visibly adjusted, nor did it displace the threshold requirement that property be assessed in the name of its owner.

Extending *Snodgrass* beyond its facts would shift the focus away from the statutory requirements of a proper tax assessment and toward a retrospective inquiry of county valuation practices in land books. Mineral severances occurred frequently without precise adjustments to surface valuations and often counties would employ shorthand descriptions in land book entries. If the absence of a visible valuation reduction were sufficient to invalidate a tax deed, the stability of mineral titles could be challenged even where the threshold statutory requirements of assessment are satisfied.

The statute is clear and straightforward. The delinquent assessment was in the name of a person who never owned that estate. The tax deed conveyed only a royalty "reserved unto" that person. The 1993 tax deed conveyed nothing as to the disputed three-fourths oil and gas interest.

For these reasons, I concur in the judgment affirming the circuit court's order.